**COMMITTEE FOR EDUCATIONAL EQUALITY, et al., Plaintiffs–Respondents,**

v.

**STATE of Missouri, et al., Defendants–Appellants,**

and

**LEE'S SUMMIT SCHOOL DISTRICT R–VII, et al., Plaintiffs–Cross–Appellants,**

v.

**STATE of Missouri, et al., Defendants–Appellants.**

No. 75660.

Supreme Court of Missouri, En Banc.

June 21, 1994.

■■■■■■■■■■■■■■

■■■■■■■

Alex Bartlett, Marshal Wilson, Jefferson City, Kenneth Brostron, Stephen A. Cooper, Sandra A. Padgett, St. Louis, Michael F. Delaney, Mark A. Thornhill, Brian F. Stayton, Shirley Keeler, Kansas City, for appellants.

John Gianoulakis, Lisa A. Pake, Robert G. McClintock, St. Louis, Jeremiah W. (Jay) Nixon, Atty. Gen., John Munich, Robert L. Presson, Asst. Attys. Gen., Jefferson City, for respondents.

Paul M. Brown, Hancock, Neal C. Staut, et al., St. Louis, for amici.

HOLSTEIN, Judge.

The judgment below not being final, the appeal is dismissed.

This appeal arises from two consolidated lawsuits filed in the circuit court of Cole County. Two additional parties were allowed to intervene as plaintiffs after that consolidation. Taken together, the plaintiffs include a not-for-profit corporation representing eighty-nine school districts known as the Committee for Educational Equality, the same eighty-nine school districts, separately named, an additional thirty-seven school districts, fifty-one students from the named plaintiff school districts, and two taxpayers. Mixed within the petitions are several claims, some claims more clear than others. Read together, the petitions allege that the funding of schools through the property tax provided for in *Mo. const. art. X, § 11*, and the "Foundation Formula" for state aid to schools, *§ 163.031, RSMo 1986*, have resulted in inequities in the distribution of money to school districts and, thus, inequities in the quality of education provided to individual students in different parts of the state. Pursuant to Mo. const. article I, §§ 2 and 10, providing for equal protection of the laws and due process, the claim is made that students in the plain-tiff public schools are being denied the fundamental right to equality in access to education. None of the plaintiffs make any claim of a denial of federal rights to due process or equal protection of the laws. In addition, the pleadings claim the funds for education provided by the state pursuant to § 163.031, RSMo 1986, are inadequate to provide students a free public education as assertedly required by *Mo. const. art. IX, § 1(a)*. The pleadings also suggest that pursuant to *Mo. const. art. III, § 36*, no funds may lawfully be appropriated for subordinate purposes until adequate funds for education are provided.

Intermingled with the above allegations is the claim that the General Assembly has violated its duty pursuant to *Mo. const. art. IX, § 3(b)*, which provides in part: "[I]n no case shall there be set apart less than twenty-five percent of the state revenue, exclusive of interest and sinking fund, to be applied annually to the support of the free public schools."

The named defendants are the state of Missouri, the Governor, the Treasurer, the State Board of Education, the Missouri Department of Elementary and Secondary Education, its Commissioner, and the Attorney General.

After the lawsuits were commenced, four school districts, Ladue, Pattonville, Kirkwood and School of the Osage, sought to intervene as defendants apparently because one of the petitions asked for a "pro rata" redistribution of the "Foundation Formula" funds free of the "previous year" restraint of § 163.031, RSMo 1986, and a concern that the trial court might declare unconstitutional the property tax structure, under which those four districts are considered "rich" districts.

An extended trial was held and a judgment entered on January 15, 1993. The operative portion of the judgment now before us includes the following three paragraphs:

The court specifically determines and declares that the Foundation Formula contained in § 163.031, RSMo, at the level at which it is presently funded is unconstitutional because of the provisions of § 1(a) of article IX [providing for free public

schools], § 2 of article I [providing for equal protection of the laws], § 36 of article III [providing for appropriations for public education to be second in order] and/or §§ 40(24) and 40(30) of article III [prohibiting the General Assembly from passing any local or special law relating to the management of public schools and prohibiting special laws where general laws can be made applicable] of the Missouri Constitution.[1]

. . . .

The court determines and declares that the General Assembly . . . must provide a child living in a poor school district the same opportunity to receive substantially the same educational [sic] as a child living in a rich district, and that deviations from equality in the distribution of resources are not permissible except to provide resources either (a) to the least advantaged or (b) for specifically identified educational needs. The court further determines and declares that the present system of funding public schools in Missouri does not comport with the requirements heretofore declared in this paragraph.

The court determines and declares that the General Assembly must provide adequate funds to establish and maintain a system of public education at the elementary and secondary level providing a general diffusion of knowledge and intelligence at the level necessary in this era to preserve the rights and liberties of the people. The court further declares that the state does not meet the requirements herein above determined and declared in this paragraph.

The judgment did not identify any school district or class of school districts excluded from the operation of § 163.031, RSMo 1986. No finding was made that any district had failed to provide a particular student with a free public education. The judgment focuses primarily on the inequality of educational opportunity for students in "poor" districts

and the inadequacy of funding provided by the state.

In addition, the judgment did not order a redistribution of appropriated funds. Although the findings suggest that a new, simplified and more flexible formula might be desirable, the judgment does not require that a new funding formula be established. The judgment only declared that the General Assembly must "provide adequate funds." The trial court withheld giving instructions on how the General Assembly was to accomplish its task. The trial court retained jurisdiction to enter an injunction and other equitable relief. The judgment was stayed until ninety days after the next regular session to give the General Assembly time to enact a "constitutionally sufficient plan for funding public education in Missouri."

The court also reserved for later decision the question of whether the "current level of funding of public education in Missouri meets the minimal constitutional level of twenty-five percent of state revenues as required by § 3(b) of article [IX] of the Missouri Constitution." From this judgment the defendants, state of Missouri and school districts of Pattonville, Ladue, School of the Osage and Kirkwood, appeal. In addition, a cross-appeal was filed by the Lee's Summit group of plaintiffs. This group includes several public school districts as well as students in some of those districts.

The parties seek to impress on us the importance of the claims made and the dire consequences that will follow a ruling unfavorable to their respective positions. Unfortunately, they have presented us with a record complicated by jurisdictional deficiencies that inhibit a decision on the merits. The judgment appealed from fails to fully dispose of all claims, giving rise to questions of appealability of the judgment due to an absence of finality and aggrievement of appealing

---

1. The use of the confusing phrase "and/or" has been widely criticized in legal writing and has caused one judge of this Court to state in exasperation "I confess I do not know what is meant by the use of the phrase 'and/or.'" *State ex rel. Adler v. Douglas*, 339 Mo. 187, 95 S.W.2d 1179,

1180 (banc 1936). The references to *Mo. const. art. III, §§ 40(24) and 40(30)* are apparently supplied gratuitously by the trial judge. Those sections are not mentioned in the pleadings. No party argues here that § 163.031, RSMo 1986, is special legislation.

parties.[2] Public school districts and taxpayers seek to invoke rights belonging to individual students, giving rise to questions of standing.[3] Into this morass is added the repeal of the only statute declared to be unconstitutional as applied, which, in turn, raises questions of mootness.

### I.

■ At the outset, this Court, *sua sponte*, must determine its own jurisdiction of this appeal. *ABC Fireproof Warehouse Co. v. Clemans*, 658 S.W.2d 28, 30 (Mo. banc 1983). This is not a matter of mere technical concern. Judicial integrity and restraint demand it. "To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound by strict rules and precedents which serve to define and point out their duty in every particular case that comes before them." *The Federalist Papers No. 78* (Alexander Hamilton). Courts, no less than the citizens they serve, must abide the rules and precedents defining their jurisdiction. To do otherwise is to erode the very foundation of the rule of law.

■ The right to appeal is established by statute. *Mo. const. art. V, § 5.* A prerequisite to appellate review is that there be a final judgment. *§ 512.020, RSMo 1986.* Even though all claims were not decided by the judgment, the trial court made an express determination that there was no just

reason for delay and its judgment was final for purposes of appeal.

This case clearly involves multiple claims and multiple parties. The rule regarding the appealability of judgments which are not final as to all claims or to all parties is Rule 74.01(b):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, ... shall not terminate the action....

■ Rule 74.01(b) permits a trial court to designate as final a judgment "as to one or more claims but fewer than all claims." Thus, the minimum unit of disposition is at least one claim. *Lockett v. Owens–Corning Fiberglass*, 808 S.W.2d 902, 906 (Mo.App. 1991). A judgment which resolves fewer than all legal issues as to any single "claim for relief" is not final notwithstanding the trial judge's designation as such. Similarly, a judgment that disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication is not a final judgment under Rule 74.01(b). *Team, Inc. v. Schlette,*

---

2. The intervenor-defendant school districts have appealed. The judgment appears to operate only against the General Assembly by declaring that it must supply "adequate funds" for education. No redistribution of funds by a different formula is required by the judgment. For these reasons, it is difficult to comprehend how any school district is "aggrieved" by the judgment as is required in order to maintain an appeal. *§ 512.020, RSMo 1986.* However, that issue need not be reached.

3. Standing is a jurisdictional matter antecedent to the right to relief. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227, n. 6 (Mo. banc 1982). The primary claim in the plaintiffs' pleadings is that students are being denied equal protection of the law in access to public education. Here there is a serious question whether school districts and taxpayers have standing to prosecute the students' equal protection claims. Generally speaking, political subdivisions, such as school districts, lack such standing because

they are not considered "persons" having a constitutional right to due process or equal protection of the law. *City of Chesterfield v. Director of Revenue*, 811 S.W.2d 375, 377 (Mo. banc 1991); *State ex rel. Brentwood Sch. Dist. v. State Tax Comm'n*, 589 S.W.2d 613, 615 (Mo. banc 1979). Similarly, the students' claims to equal protection may not be raised by third parties. *State ex rel. Reser v. Rush*, 562 S.W.2d 365, 369 (Mo. banc 1978). School districts have a potential, if not inherent, conflict of interest with students claiming the right to equal protection of the law in education. Such rights are enforceable not only against the state at large but against the school district. *See Brown v. Board. of Educ.*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1984). Nevertheless, we make no decision here regarding standing or the propriety of school districts expending resources to prosecute claims belonging to individual students, and no decision is made regarding the conflict of interest issue.

814 S.W.2d 12, 13–14 (Mo.App.1991); *Quiktrip Corp. v. City of St. Louis,* 801 S.W.2d 706, 711 (Mo.App.1990).

Rule 74.01(b) was adopted as a rule of this Court in 1988. Its predecessor was former Rule 81.06, which provided in part:

> When a separate trial of any claim, counterclaim or third party claim is ordered in any case and a jury trial thereof is had, the separate judgment entered upon the verdict therein shall be deemed a final judgment for the purposes of appeal within the meaning of § 512.020. When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case, the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of § 512.020, RSMo, unless specifically so designated by the court in the judgment entered.

Notwithstanding well-reasoned decisions to the contrary, Rule 81.06 was construed to give a trial court essentially unfettered discretion to decide if its orders were final and appealable, even though there was only a "partial disposition ... of a distinct judicial unit." *Speck v. Union Elec. Co.,* 731 S.W.2d 16, 20 (Mo. banc 1987). This Court apparently rethought that decision within the year when it adopted Rule 74.01(b). Unlike its predecessor, the new rule conditioned the exercise of discretion by the trial court on the existence of a judgment that disposed of at least one claim as to one party.

■ When Rule 74.01(b) was adopted as a rule of this Court in 1988, it was copied almost verbatim from Federal Rule of Civil Procedure 54(b). The meaning of the phrase "one claim for relief" was developed in the federal cases prior to the adoption of our rule. While not binding authority, the federal cases are highly persuasive. Where a federal rule has been construed by the federal courts and our Court thereafter adopts a rule on the same subject using identical language, there is no principled way to ignore the federal cases.

■ Under the federal cases construing F.R.C.P. 54(b), in determining whether an action presents more than one claim for relief, the focus is on the number of legal rights asserted in the action. If a complaint seeks to enforce only one legal right, it states a single claim, regardless of the fact that it seeks multiple remedies. *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 744 n. 4, 96 S.Ct. 1202, 1206–07 n. 4, 47 L.Ed.2d 435 (1976). A further refinement of what is meant by "one claim" is that a claim is "the aggregate of operative facts which give rise to a right enforceable in the courts." *McIntyre v. First Nat. Bank of Cincinnati,* 585 F.2d 190, 192 (6th Cir.1978); *Rhodes v. Jones,* 351 F.2d 884, 886–87 (8th Cir.1965); *Backus Plywood Corp. v. Commercial Decal, Inc.,* 317 F.2d 339, 341 (2nd Cir.1963). Worded somewhat differently, claims are considered separate if they require proof of different facts and the application of distinguishable law, subject to the limitation that severing the claims does not run afoul of the doctrine forbidding the splitting of a cause of action. *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 45 (1st Cir.1988); *Tolson v. United States,* 732 F.2d 998, 1002 (D.C.Cir.1984). The purpose and policy behind F.R.C.P. 54(b) is to avoid redundant review of multiple appeals based on the same underlying facts and similar legal issues. *Hudson River Sloop Clearwater, Inc., v. Department of the Navy,* 891 F.2d 414, 418 (2nd Cir.1989).

Missouri's Rule 74.01(b) serves precisely the same purpose. A construction of Rule 74.01(b) that defeats the underlying purpose of the rule must be rejected. By withholding ruling on part of a claim, questions are left open which, upon full adjudication of the claim by a trial court, may make the order appealed from moot or which, when fully decided, may even change the identity of aggrieved parties.

■ Applying the above principles to the case at hand, the plaintiffs made multiple claims even though the claims are not segregated into counts. Neither the pleadings nor the judgment are models of clarity. However, the claims raised include the claim that the students' right to equal protection of the law has been violated and that the General Assembly's duty to provide adequate funding for education has been violated by § 163.031,

RSMo 1986, as funded.[4] Closely allied to the adequacy of funding assertion is a claim, almost implicit in nature, that the legislature violates the requirement that educational funding be second in order when it appropriates and disburses money for subordinate purposes without adequately funding education. In support of those claims the plaintiffs asked for the remedies of declaratory judgment, injunction and other equitable relief. The trial court, in response to the claims and the requests for relief, entered a declaratory judgment with regard to the equal protection, adequacy of funding and priority of funding claims. However, the trial court specifically retained jurisdiction over those claims "for the purpose of enforcing the judgment including, if needed, the grant of injunctive relief, the appointment of qualified educator(s) as master(s) or the utilization of such other equitable and legal powers as may be just and proper." Plainly, the circuit court did not dispose of all of the remedies sought as to any one claim for relief.

 Although not briefed, at oral argument it was suggested that the judgment was final because it disposed of the "claim" for declaratory judgment. That argument misapprehends the nature of the declaratory judgment act. The declaratory judgment act was designed to provide a preventative *remedy*. It supplements but does not supplant other remedies. "[It] affects exclusively matters of practice, pleadings, and forms and modes of proceedings; it does not create any new or substantive rights, but is procedural in nature." *26 C.J.S.* Declaratory Judgments § 1 (1956). While the declaratory judgment act is liberally construed to accomplish its preventive purpose, it is but one of several remedies, not a substantive claim.

In *International Minerals & Chemical Corp. v. Avon Products*, 817 S.W.2d 903 (Mo. banc 1991), the plaintiff had filed a 5–count petition. The trial court had granted judgment as to Count I, a count seeking a declaratory judgment regarding an indemnity agreement. The petition alleged that there was an indemnity agreement between the plaintiff and defendant under which the defendant had agreed to pay patent infringement claims that might be made against the plaintiff by third parties. Although the precise amount of damages was undetermined when the action was filed, Count V of the same petition asked for damages under the indemnity agreement. The trial court entered a judgment finding that an indemnity agreement existed under which the defendant was liable for certain patent infringement claims made against the plaintiff. However, the trial court withheld ruling on the separate count relating to damages for breach of the indemnity agreement. This Court concluded that there was ample authority "for defining by rule the scope of the finality requirement so as to include a determination that could be made subject of a separate judgment." 817 S.W.2d at 906. That case is distinguishable from the case now under consideration. In that case, the assessment of damages for patent infringement was dependent upon different operative facts, some of which were undetermined when the petition was filed, and upon a different legal theory from the existence and terms of the indemnity agreement. Even though the indemnity claim and the patent infringement claim were connected, each involved different legal theories and different operative facts.

There are no additional or different facts, and no additional legal principles applicable in determining whether to grant injunctive or other equitable relief in addition to the declaratory judgment in this case. Because remedies are left wholly unresolved regarding each of the claims for relief made before the trial court, the judgment is not final.

██ *International Minerals*, while reaching the correct result, went too far in some respects. It states there is "no substantial

---

4. Whether the claim that the General Assembly owes a duty to provide adequate funding under Missouri Constitution article IX, § 1(a) is distinct from the claim that the General Assembly owes a duty to allocate 25% of revenue to education pursuant to Missouri Constitution article IX, § 3(b), is not critical to the analysis here. Obviously, if the two provisions are only aspects of but one legal claim, a failure to address the article IX, § 3(b), aspect would prevent the "adequacy of funding" claim from being a final judgment.

distinction between Rule 74.01(b) and former Rule 81.06." 817 S.W.2d at 905 n. 2. It also states, "Rule 74.01(b) does not borrow substantially from [F.R.C.P. 54(b)]." 817 S.W.2d at 905. No fair reading of the three rules supports those statements. Plainly, Rule 74.01(b) and F.R.C.P. 54(b) are essentially identical, while former Rule 81.06 does not even approach the wording of the other two rules. Specifically, former Rule 81.06 has no requirement that the judgment dispose of at least one claim for relief as to one party as a precondition to the exercise of discretion to determine "no just reason for delay" of the appeal. To hold that Rule 74.01(b) and former Rule 81.06 are the same renders meaningless the requirement that the order dispose of one claim. To the extent that *International Minerals* might be read to remove the requirement that the judgment dispose of one claim as to one party, it should not be followed. A judgment is not final merely because it could, in a hypothetical case, be final if it does not, in the case under consideration, dispose of one claim for relief as to any party.

## II.

Even if we were to strain the meaning of "one claim" beyond the limits of the plain meaning of the words and to ignore the nearly uniform construction of those same words predating adoption of our Rule 74.-01(b), there is a second reason why the judgment here was never final.

■■■ Assuming there is at least one claim fully resolved as to at least one party, Rule 74.01(b) grants circuit courts the discretion to declare that aspect of the judgment final upon a finding of "no just reason for delay." Absent such finding, Rule 74.01(b) is inapplicable. The circuit judge, in exercising that discretion, is granted broad latitude to act as a "dispatcher" of the case. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980). However, where the circumstances of the case and the judgment entered are wholly inconsistent with a finding of "no just cause for delay," a finding to that effect by a trial court is an abuse of discretion. The

peculiar posture of this case demonstrates just such an abuse of discretion.

The trial court's order, entered January 15, 1993, did not become immediately effective but provided:

> In order *to allow time for the General Assembly to enact a constitutionally sufficient plan for funding public education* in Missouri and also to allow time for the appellate review of this memorandum opinion and judgment, *the effectiveness of the foregoing paragraphs one through five are stayed* until ninety days after adjournment of the first regular session of the 87th General Assembly. The court reserves the authority to modify the stay upon prior notice to the parties. (Emphasis added).

■■■ A stay "to allow time for appellate review" was meaningless for two reasons. First, execution of judgment is automatically stayed pending appeal where, as here, an appellant is a school district. *Rule 81.09.* Second, no "executory process" follows a declaratory judgment. *Gutensohn v. K.C. Southern Ry. Co.*, 140 F.2d 950, 953 (8th Cir.1944). The only viable reason for granting a stay was that of judicial economy.

At times, principles of judicial economy will militate in favor of certifying "no just reason for delay" to allow an appeal of an isolated claim. At other times, principles of judicial economy will be better served by staying a declaration or an execution of a judgment to permit the parties to rectify the source of conflict without the expense, time and energy consumed by an appeal. In this case, the trial judge attempted to both certify an incomplete judgment final for purposes of appeal and to stay entry of the order to allow the legislature time to enact a new funding formula. It is clear that the judge wisely anticipated the legislature's willingness to act while the judgment was stayed. However, all of the benefits of judicial economy served by a stay to allow parties to resolve their dispute without an appeal would be defeated by authorizing contemporaneous pursuit of an appeal.

■■■ The language used—"allow time for the General Assembly" and "the effectiveness of the foregoing paragraphs one

through five are stayed"—demonstrates a just reason for delay as of the entry of the order on January 15, 1993. The general finding that there was "no just reason for delay" is a direct contradiction of the specific finding that the judgment should be stayed to permit legislative action. No one contests the trial court's authority to stay its judgment. Clearly, the stay was consistent with principles of sound judicial administration.

■ In granting the stay, the circuit court necessarily determined that just reason existed for delay in giving effect to its judgment because of the potential that the General Assembly might repeal § 163.031, RSMo 1986, and provide for a new funding formula. Where a new enactment supersedes the statute on which the litigants rely to define their rights, the appeal no longer represents an actual controversy, and the case will be dismissed as moot. *Bank of Washington v. McAuliffe,* 676 S.W.2d 483, 487 (Mo. banc 1984). "Lapse of time may create a condition which may cause the controversy involved in a case to become a mere moot question." *Fugel v. Becker,* 2 S.W.2d 743, 746 (Mo. banc 1928). Indeed, during the stay, the General Assembly passed S.B. 380. Among its numerous provisions was an unconditional repeal of § 163.031, RSMo 1986, and the enactment of provisions reforming Missouri's school funding scheme.

Here the circuit court's order anticipated that during the stay, there were three possible results: legislative inaction, enactment of a constitutionally sufficient plan, or passage of a constitutionally insufficient plan. In the case of legislative inaction, the stay would expire, by its terms, and the order would become final and appealable at the expiration of the stay.

However, in this case, the legislature clearly acted, leaving only two possibilities, a sufficient plan or an insufficient plan. Of course, the new plan was never subject to judicial scrutiny to determine its constitutional sufficiency. Thus, the passage of S.B. 380 moots the original order as to § 163.031, RSMo 1986, and would require new evidence and new pleadings before the circuit court regarding S.B. 380. Only then could the circuit court determine if the new plan for school funding is sufficient or insufficient.

■ In sum, by the terms of the stay order, absence of a "just reason for delay" of the appeal could only come into being after (1) legislative inaction and (2) the expiration of the stay. Because the first event did not and will not occur, the predicate to a determination of "no just reason for delay" of the appeal never existed, and the judgment is not final under Rule 74.01(b).

The issues in this case are clearly of great public significance. However, it is not within the province of courts "to decide abstract, hypothetical or moot questions, disconnected from the granting of actual relief." *Fugel v. Becker,* 2 S.W.2d at 746. It is unwise for courts to shortcut procedural requirements necessary to fully and fairly address the substantive issues in cases of great public significance, when those same procedures would be required without pause in cases of lesser magnitude. To say a partial appeal is permissible due to the importance, infrequency or harshness of the case is neither workable nor reliable as a benchmark for appellate review. *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. at 10, 100 S.Ct. at 1466. The circuit court abused its discretion in determining its order to be final under Rule 74.01(b). Since the circuit court order was not a final judgment, this Court lacks jurisdiction and the appeal must be dismissed.

## CONCLUSION

■ The state requests that this Court vacate the judgment below, as opposed to merely dismissing the appeal, fearing the effects of *res judicata* in future proceedings. The judgment here is not final but is, at most, interlocutory in nature. A judgment that is to be used as the basis for the application of *res judicata* must be final and not an interlocutory judgment. *Noll v. Noll,* 286 S.W.2d 58, 60–61 (Mo.App.1956); *Restatement (Second) of Judgments § 13* (1982). Because the judgment here is subject to modification, and because the state has done all within its power to seek appellate review, *res judicata* principles will not apply to make the trial court's decision, as it now exists, preclusive of issues in future litigation.

The appeal is dismissed. Although invited to do so, the Court makes no decision regarding the constitutionality of S.B. 380. Neither do we pass on any issue other than the absence of finality of the judgment entered by the trial court. Other issues necessarily await future determination. However, in subsequent proceedings in this case or in new litigation, the trial court and the parties should be cognizant of the jurisdictional problems that have infected the earlier proceedings in this case.

COVINGTON, C.J., BENTON, THOMAS and PRICE, JJ., concur.

ROBERTSON, J., concurs in result in separate opinion filed.

LIMBAUGH, J., concurs in opinion of ROBERTSON, J.

ROBERTSON, Judge, concurring in result.

The parties in this case raise three distinct constitutional challenges to the system of school financing in place in Missouri *prior to* the passage of Senate Bill 380 in 1993. 1993 Laws of Missouri. First, the parties claim that the former Section 163.031 violates the equal protection provisions of article I, section 2 of the Missouri Constitution. This claim is about the manner in which both state and local funds *are distributed* in this state for the education of school children. Second, the parties claim that the state has failed to set aside at least twenty-five percent of state revenue, exclusive of interest and sinking fund, for the support of free public schools in violation of article IX, section 3(b) of the Missouri Constitution. Finally, the parties claim that the amount of money set aside under the former system of education funding was inadequate to provide an education for the school children of this state sufficient to preserve "the rights and liberties of the people," in violation of article IX, section 1(a) of the Missouri Constitution. The latter two claims are about how much money is appropriated for the free public schools in this state.

Following a three-week trial, the trial court issued a lengthy memorandum opinion purporting to find facts, reach conclusions of law, and enter a judgment. Although little else is certain in the document, it is clear that the trial court severed the plaintiffs' claims that the amount of funding being provided public elementary and secondary education of this state failed to reach twenty-five percent of state revenue as required by article IX, section 3(b). It appears from the judgment that the remaining two constitutional claims—article I, section 2 and article IX, section 1(a)—remain in the case and that the trial judge intended to declare the rights of the parties in the judgment it entered on those issues. The relevant portions of the judgment read as follows.

■ The Court specifically determines and declares that the Foundation Formula contained in Section 163.031, RSMo, at the level at which it is presently funded is unconstitutional because of the provisions of Section 1(a) of Article IX [providing for free public schools], Section 2 of Article I [providing for equal protection of the laws], Section 36 of Article III [providing for appropriations for public education to be second in order] and/or Sections 40(24) and 40(30) of Article III [prohibiting the General Assembly from passing any local or special law relating to the management of public schools and prohibiting special laws where general laws can be made applicable] of the Missouri Constitution.

\* \* \* \* \* \*

■ The Court determines and declares that the General Assembly ... must provide a child living in a poor school district the same opportunity to receive substantially the same educational [sic] as a child living in a rich district, and that deviations from equality in the distribution of resources are not permissible except to provide resources either (a) to the least advantaged or (b) for specifically identified educational needs. The Court further determines and declares that the present system of funding public schools in Missouri does not comport with the requirements heretofore declared in this paragraph.

■ The Court determines and declares that the General Assembly must provide adequate funds to establish and maintain a system of public education at the elemen-

tary and secondary level providing a general diffusion of knowledge and intelligence at the level necessary in this era to preserve the rights and liberties of the people. The Court further declares that the State does not meet the requirements hereinabove determined and declared in this paragraph.

Reading these three paragraphs, it appears that the first paragraph is a general declaration as to the constitutionality of the former Section 163.031, RSMo 1986. The two subsequent paragraphs speak specifically to the two issues upon which the court apparently intended to declare the constitutional rights of the parties under Section 163.031. The second paragraph speaks to the manner in which education funds are distributed to students within the state and declares that the former foundation formula violates equal protection. The third paragraph speaks not to the manner in which funds are distributed but to the amount of funds appropriated for education.

The Court's opinion concludes that the judgment entered by the trial court is not final and holds that the Court has no jurisdiction to consider the appeal in this case. I disagree with the Court's decision that the trial court's judgment is not final and, therefore, not appealable. I also believe the Court must address issues of standing and mootness raised by the parties.

Though it is true that the judgment of the trial court is fraught with ambiguities and uncertain language, I believe, nevertheless, that that portion of the judgment declaring Section 163.031 in violation of the state constitution's guarantee of equal protection is a final judgment.

Declaratory judgment actions serve a preventive function in the law. They permit parties to obtain a judicial declaration of their rights and obligations in advance of either causing or suffering a legal injury. Thus, a declaratory judgment action need not seek any specific relief other than a declaration of the rights of the parties. 26 C.J.S. Declaratory Judgments, § 1. Further, a judgment entered in a declaratory judgment action is final even though it does not provide the parties with any relief beyond the decla-

ration of rights for which the petition prays. *Id.*

These general rules relating to declaratory judgments are, of course, subject to statutory modification. This is because the common law does not recognize declaratory judgment actions; they are entirely creatures of statute and suspend rules of procedure that normally require a ripe controversy founded on injury to a party as a predicate to a court deciding a controversy.

The principal opinion decides this case without a single reference to the declaratory judgment statutes of this state. I believe the principal opinion's focus on common law remedies is misplaced and misunderstands the nature of declaratory judgments.

In Missouri, "the circuit courts ... have power to *declare rights,* status, and other legal relations *whether or not further relief is or could be claimed."* § 527.010, RSMo 1986. [Emphasis added.] A declaratory judgment is open to "any person ... *whose rights,* status or other legal relations are *affected by a statute."* Moreover, the declaratory judgment statutes are "to be liberally construed," Section 527.120, RSMo 1986, and employed to "terminate a controversy *or* remove an uncertainty." § 527.050, RSMo 1986. [Emphasis added.]

The Court's decision that the trial court's judgment in this case was not final and thus not reviewable on appeal is a product of the supposed failure of the judgment to provide any relief beyond the declaration of rights. Because a declaratory judgment is final even if it does not provide relief beyond the declaration of rights, the judgment entered by the trial court declaring that Section 163.031 violates rights guaranteed by the constitution in this case is final for purposes of review on appeal. The trial court's judgment is founded on the aggregate of operative facts giving rise to the equal protection claim raised by the parties. The judgment attempted to remove uncertainty as to the constitutionality of Section 163.031. This is final and sufficient under Section 527.010.

The Court takes a contrary view, mixing claims with remedies and concluding that "[w]hile the declaratory judgment act is lib-

erally construed to accomplish its preventive purpose, it is but one of several remedies, not a substantive claim." [Maj. op. at 452.] I do not understand this statement. It is founded on alchemy and seems to say that a court cannot declare rights without also providing some additional remedy beyond that declaration. If the Court means that, it is quite wrong and contrary to Section 527.010.

Where the trial court enters a judgment on a claim that is both final and complete as to that claim, it may invoke Rule 74.01(b). The judgment in this case decides the equal protection issue. It disposes of that claim sufficiently to be a final judgment under Section 527.010, *see* Rule 87.08, ("[a] declaratory judgment ... shall have the force and effect of a final judgment or decree"), and is subject to appeal in the presence of other, unresolved claims, if the requirements of Rule 74.01(b) are met.

I agree with the Court that the trial court confused the issue mightily when it said that there is no just reason for delay in one breath and, in the next, stayed its own judgment for ninety days, inferring that a just reason for delay exists. I believe this Court has some discretion, as well, in cases of this magnitude and would permit the appeal of the equal protection declaration under Rule 74.01(b).[1]

Aside from my disagreements with what the Court did say, I also disagree with the Court's decision to remain silent on the standing and mootness issues by the parties in this case.

First, standing: I believe it is incumbent on the Court to consider the question of the standing of the parties because the jurisdictional flaw in the trial court's order upon which the principal opinion relies is not apparent on its face. If the parties seeking review have no authority to do so because they lack standing, the Court should not consider the issues raised by them whether they are procedural or substantive.

Standing asks whether the persons complaining about a judgment have a right to do so. Standing is a jurisdictional matter antecedent to the right of relief. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227, n. 6 (Mo. banc 1982). The standing question is preliminary to a review of judgment itself, unless it is clear on the face of the record that the trial court did not possess *subject matter* jurisdiction. In this case, the trial court clearly possessed subject matter jurisdiction.

The state argues that the plaintiffs lack standing to raise equal protection claims. Article I, section 2, guarantees to "persons" equal protection of the laws. Political subdivisions established by the laws of the state are not "persons" entitled to claim constitutional equal protection. *City of Chesterfield v. Director of Revenue*, 811 S.W.2d 375, 377 (Mo. banc 1991). School districts are creatures of state law established to carry out governmental functions and "are not 'persons' within the protections of the due pro-

---

1. Part of the difficulty in this case is the trial court's apparent willingness to play a role in the political process and to attempt some influence over the legislature beyond stating the law. Apparently freed from the constraints of legal concerns by the hydraulic pressures of the moment, the trial court salted its "order" with threats to appoint masters and manage the schools if the legislature did not adjust the manner in which school funds were distributed in this state. The trial court's order takes on tones of a political manifesto and reads into the state constitution an authority in the judicial branch to direct the expenditure of state funds in a manner different than that decreed by the legislature. Obviously, that "order" had the desired result. The legislature reacted with new legislation, apparently believing it risked judicial management of Missouri schools if it did not alter Section 163.031.

The plaintiffs' claims in this case are founded solely on the state constitution. Although I am not willing to decide the point without the assistance of briefs and argument, I wonder whether the judicial branch has the authority to "take over" the state's schools under an equal protection claim founded on the *state* constitution. I find no supremacy clause in the Missouri constitution that permits the courts to undertake executive and legislative functions in a pro-active manner in the face of unconstitutional expenditures by the legislative and executive branches. It is clear that the courts can enjoin the expenditure of money when that expenditure violates the state constitution; it is considerably more doubtful whether the judicial branch can direct expenditures in a manner contrary to that expressed by the legislature when only state constitutional claims are at stake.

cess clause." *State ex rel. Brentwood School District v. State Tax Commission,* 589 S.W.2d 613, 615 (Mo. banc 1979). The trial court should have dismissed the school districts' claims that Section 163.031 violates equal protection.

The two taxpayer plaintiffs in this case also made no claim that their own constitutional rights to equal protection were violated. Their claims were simply that other persons—students—were being denied equal protection of the law. We do not permit a litigant to assert the constitutional rights of another. To allow persons suffering no injury to attack a statute's constitutionality would permit parties to create controversy and litigation that do not adversely affect them. *State ex rel. Reser v. Rush,* 562 S.W.2d 365, 369 (Mo. banc 1979). Therefore, the taxpayers, qua taxpayers, lack standing to raise the students' equal protection claims for them. The trial court should have dismissed the taxpayers' equal protection claims as well.

As to the merits of the trial court's judgment, it appears that the judgment addresses two independent constitutional claims. The first is the students' claim that Section 163.031 violates their rights to equal protection under article I, section 2. The second is that the amount of school funding appropriated by the General Assembly for the free public schools violates article IX, section 1(a), in that it is insufficient to preserve "the rights and liberties of the people."

Turning first to the article IX, section 1(a) claim,[2] the trial court's judgment assumes that section 1(a) creates a substantive funding obligation in the General Assembly that exists independent of the twenty-five percent requirement of article IX, section 3(b). I believe the trial court's judgment misreads the constitution.

Article IX, section 1(a), requires the General Assembly to "establish and maintain free public schools for the gratuitous instruction of all persons within this state within the ages not in excess of twenty-one years as prescribed by law." Free public schools are required under the constitution because "a

general diffusion of knowledge and intelligence [is] . . . essential to the preservation of the rights and liberties of the people." Art. IX, § 1(a). Section 3(b) establishes a constitutional minimum appropriation of state funds (less exclusions)—twenty-five percent—for the establishment and maintenance of free public schools. In my view, section 3(b) establishes a constitutional presumption that twenty-five percent of state revenues is adequate for purposes of funding the free public schools. To the extent that the General Assembly wishes to appropriate more than twenty-five percent of state revenues for that purpose, it reflects a discretionary policy choice in the legislative body to apply state resources in that manner and for that purpose.

Thus, I do not believe, as apparently the trial court did, that section 1(a) creates a substantive funding obligation in the General Assembly independent of section 3(b). Instead, I believe that the two sections must be read together.

If my reading of the constitution is correct, plaintiffs' section 1(a) claim cannot exist independent of the section 3(b) claim. The trial court severed the section 3(b) claim from the other claims in this case. It should also have severed the section 1(a) claim. The trial court erred in deciding the section 1(a) claim without also deciding the section 3(b) claim.

Though the principal opinion finds that the trial court's judgment that former Section 163.031 violates the students' rights to equal protection under article I, section 2, is not final, and I disagree, much of that argument is dicta in the final analysis. Subsequent to the trial court's entry of its judgment and perhaps as a result of the trial court's threats, the General Assembly repealed Section 163.031 and enacted a new foundation formula. The new formula is presently in effect and despite the fact that it is being phased in over a period of years, it is substantively different from the statute that is the focus of plaintiffs' constitutional claims. The trial court has not made any determination as to whether the new foundation formu-

---

**2.** In my view, plaintiff school districts and taxpayers have standing to raise the question whether Section 163.031 violates article IX, section 1(a).

la adopted by the General Assembly and approved by the governor following the entry of judgment in this case meets the requirements of the constitution.

A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. When an event occurs which renders a decision unnecessary, the appeal will be dismissed. And where an enactment supersedes the statute on which the litigants rely to define their rights, the appeal no longer represents an actual controversy, and the case will be dismissed as moot.

*Bank of Washington v. McAuliffe,* 676 S.W.2d 483, 487 (Mo. banc 1984) [citations omitted].

There is no question but that the legislature repealed the foundation formula upon which the trial court passed judgment. Thus, the question of the constitutionality of the old formula is moot.

All of the parties in this case argue that this case is not moot. Most of the arguments are founded not so much on legal principle but on the parties' assurance that the importance of the questions before the Court are worthy of the Court making an exception to those principles in this case. It remains the fact, however, that the rules under which the courts of this state have historically operated prevent the issuance of declaratory judgments of constitutional rights independent of any governmental act that impinges or threatens to impinge on claimed rights. Once the General Assembly repealed former Section 163.031, any basis for this Court deciding the constitutionality of that statute evaporated. This is especially so when none of the pleadings of the parties in this case challenge the constitutionality of the newly-enacted foundation formula.

Nor does it matter that Senate Bill 380 is phased in over a period of years. Once the old foundation formula ceased providing the entire basis for the distribution of state revenues for the support of free public schools, the issue of the constitutionality of that formula became moot.

Finally, the parties contend that this appeal is not moot because section D of Senate Bill 380 provides for a statewide vote if this Court "does not affirm in whole or in part the [circuit court's] decision" in this case. § 143.107.2, RSMo Supp.1993. Whether the constitution prohibits the hybrid procedure created in section D is not a question before the Court in this case. That issue was neither pleaded in, argued before, nor decided by the circuit court in the judgment under review.

That the issues raised in this case are important is beyond dispute. Nevertheless, this Court has not historically claimed for itself an extra-constitutional authority to issue advisory opinions as to the constitutionality of repealed statutes nor has it decided the constitutionality of newly-enacted statutes before an action is filed challenging their legality or before a full factual development of the issues in the trial court. I see no reason to claim that authority now.

In sum, I would hold that the judgment of the trial court declaring that Section 163.031 violates article I, section 2, is final and now moot. I would also hold that plaintiff school districts and taxpayers have no standing to bring an equal protection claim and that their appeals should be dismissed for that reason. The article XI, section 1(a) claim brought by the plaintiffs cannot be addressed by the Court at this time because that constitutional provision cannot be read without reference to article IX, section 3(b). Finally, I would remand the judgment of the trial court regarding the students' claims that former Section 163.031 violates article I, section 2, to the trial court with directions to dismiss those claims as moot.