**HOME INSURANCE COMPANY,
Plaintiff–Appellant,**

v.

**CARMAR GROUP, INC., Elsie Tetlow, United States Fidelity And Guaranty, Daniel R. Ray, And Hershewe & Gulick, P.C., Defendants–Respondents,**

**Beverly Ables, Personal Representative of the Estate of Jerry Ables, Intervenor–Respondent.**

No. 20744.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 7, 1996.

---

1. Section 558.019.7, RSMo 1994, has substituted "the effective date of this act" with "August 28, 1994."

William W. Francis, Jr., Randy C. Alberhasky, Placzek & Francis, Springfield, for appellant.

Ron Mitchell, Blanchard, Robertson, Mitchell & Carter, Joplin, for respondent Carmar.

Daniel R. Ray, Hershewe & Gulick, P.C., Joplin, for intervenor–respondent.

SHRUM, Judge.

Home Insurance Company (Home) appeals from the trial court's order that sustained an intervenor's Motion to Enforce Settlement. The appeal must be dismissed as premature for lack of a final or definite judgment.

In the underlying action, Home sued Carmar Group, Inc. (Carmar), an alleged third-party tortfeasor, to recover what Home had paid out in workers' compensation benefits to a claimant, Jerry Ables (Ables). *See* § 287.150, RSMo 1994.[1] Background facts of the underlying litigation follow.

Ables, an employee of Mid America Dairymen, Inc. (Mid America), was injured in an on-the-job accident. The accident occurred when an employee of Carmar struck Ables with a forklift. Home, which was Mid America's workers' compensation insurer, paid Ables benefits in excess of $30,000.

Ables and his wife hired Daniel R. Ray (Ray) of the law firm of Hershewe & Gulick, P.C. to assert their tort claims against Carmar. Carmar's liability insurer was United States Fidelity and Guaranty (USF & G). Elsie Tetlow (Tetlow), a claims adjuster for USF & G, negotiated a settlement of Ables' claims with Ray for $34,000. To effect that settlement USF & G issued two checks, one for $17,000 payable to Beverly Ables and Hershewe & Gulick, her attorneys, and another check for $17,000 payable to Jerry Ables and Beverly Ables, Hershewe & Gulick as their attorneys, and Home Insurance Company. Home refused to endorse the

---

1. In part, § 287.150.1 reads: "1. Where a third person is liable to the employee ... for the injury ..., the employer shall be subrogated to the right of the employee ... against such third person, and ... such employer may recover any amount which such employee ... would have been entitled to recover. Any recovery by the employer ... shall be apportioned between the employer and employee ... using the provisions of subsections 2 and 3 of this section."

$17,000 check and ultimately filed this lawsuit on September 23, 1993.

On December 13, 1993, Home amended its petition. In Count I Home sought to recover from Carmar what it had paid Ables as workers' compensation benefits. In Count II Home sought actual and punitive damages from Carmar for its alleged participation in a scheme to defraud Home of its subrogation interest in Ables' tort claim. Ables' earlier request to intervene in this case was sustained on December 16, 1993.[2]

On June 26, 1995, Home again amended its petition, this time adding both new parties and new claims. The new parties were Tetlow, USF & G, Ray, and Hershewe & Gulick. The new claims sought damages, actual and punitive in some counts, based on differing theories. Count III asserted that Tetlow participated in a scheme to deprive Home of its subrogation interest in Ables' tort claim against Carmar; Count IV against Tetlow and USF & G was based on a negligence theory; Counts V and VI are similar, and alleged that Ray violated a fiduciary duty to Home by participating in the scheme and that Hershewe & Gulick, P.C. are responsible for his actions; and finally, Count VII charged that all defendants acted to accomplish an unlawful purpose in depriving Home of its subrogation rights. With the underlying case thus explained, we turn to pertinent facts that led to this attempted appeal.

On November 7, 1995, Intervenor filed a Motion to Enforce Settlement or, in the Alternative, for Summary Judgment. Omitting the caption, heading, and attorney's signature, it reads:

"COMES NOW, Intervenor ... and respectfully moves the Court for an Order as follows:"

"1. Enforcing the settlement entered into by Home Insurance Company and Carmar Group, Inc.; or

"2. In the alternative, granting Intervenor summary judgment pursuant to Mo. R.Civ. Proc 74.04, on the grounds that no genuine issue of material fact exists, and Intervenor is entitled to judgment as a matter of law.

"In support thereof, Intervenor incorporates the statements of fact and suggestions appended hereto."

From Intervenor's Statement of Facts and Suggestions and attachments thereto and also from Home's response thereto, we learn that two letters written in 1994 form the basis for Intervenor's claim that a settlement had been effected.

On November 9, 1994, Home's attorney wrote to Ray and to Carmar's attorney:

"My client and I have reviewed the totality of this matter from the beginning once again. The best we can do on any settlement is $23,000. If that will not settle the file then I need to go ahead and get depositions scheduled. Please let me hear from you as soon as possible."

Attorney Ray's response, dated December 6, 1994, reads:

"USF & G [Carmar's insurer] wants to pay $23,000 into Court. Under *Ruediger*,[3] I'm entitled to a fee of more than my last demand. Send me some authority for the proposition that I don't get a fee. Barring that, tell me how you propose to divide the $23,000."

Based on the foregoing, Intervenor urged the trial court to "issue an Order enforcing the settlement agreement entered into by all of the parties in this case...."

On December 22, 1995, the trial court sustained Intervenor's Motion to Enforce Settle-

---

**2.** After Jerry Ables was permitted to intervene, an April, 1994, docket entry suggested his death and need for substitution of parties. Thereafter, all pleadings improperly described Intervenor as the "Estate of Jerry Ables." By having the record supplemented, we learned that the substituted party was Beverly Ables, personal representative of Jerry Ables' estate. In the caption of our opinion we show Beverly Ables in her fiduciary capacity as intervenor-respondent.

**3.** Obviously a reference to *Ruediger v. Kallmeyer Bros. Serv.*, 501 S.W.2d 56 (Mo.banc 1973), where the Supreme Court interpreted § 287.150 and provided a formula for distribution of the proceeds of a third-party action under that statute.

ment. By an amended judgment filed December 26, 1995, the trial court tried to make its order a final judgment by designating it final and appealable.

> "HEREBY ORDERS, ADJUDGES AND DECREES that the intervenor's Motion to Enforce Settlement is sustained. The court further finds that pursuant to rule 74.01(b) of the Missouri Supreme Court Rules of Civil Procedure, this order and judgment is final for purposes of appeal and there is no just reason for delaying an appeal of same."

It is from the amended judgment which Home now attempts to appeal.

■ If not raised by the parties, an appellate court must notice, sua sponte, matters preventing it from obtaining jurisdiction. *Committee for Educ. Equality v. State,* 878 S.W.2d 446, 450[1] (Mo.banc 1994). In this case there are two matters preventing us from obtaining jurisdiction.

■ "A judgment which is indefinite is void and unenforceable." *Cook v. Curtis,* 837 S.W.2d 29, 30[1] (Mo.App.1992); *see also Commerce Bank of Springfield v. Green,* 760 S.W.2d 602, 603[1] (Mo.App.1988). A judgment must be in such form that execution may issue without the necessity of external proof and another hearing. *Commerce Bank of Springfield,* 760 S.W.2d at 603[1]. A judgment which is void because of its indefiniteness prevents an appellate court from obtaining jurisdiction on appeal, except to determine the invalidity of the order or judgment and to dismiss the appeal. *Cook,* 837 S.W.2d at 30.

■ Here, the trial court did not specify in its judgment which parties or to which issues the enforced settlement is to apply. This indefiniteness is fatal to the judgment, considering the multiple defendants and multiple claims that were pending when the judgment was entered. The fatal indefiniteness is not cured by referring to Intervenor's Motion to Enforce Settlement or the suggestions in support thereof. To the contrary, those documents merely add to the confusion about

what claims and what parties were supposedly resolved by the claimed settlement. To illustrate, Intervenor's motion requests an order "[e]nforcing the settlement entered into by Home ... and Carmar" without specifying whether the alleged settlement related to Home's subrogation claim against Carmar (Count I), its fraud claim against Carmar (Count II), or both. Intervenor added to the confusion when in her Suggestions in Support of Motion to Enforce Settlement she urged the trial court to "issue an Order enforcing the settlement agreement entered into by *all of the parties in this case.*" (emphasis added). When Intervenor moved to enforce the settlement, there were five defendants and seven counts. The possibility that Intervenor and the trial court belatedly viewed the purported settlement between Home and Carmar as resolving the case as to all five parties and all seven pending claims is presented by a docket entry made February 5, 1996:[4]

> "Parties appear by counsel. Court finds that the case has been concluded and is on appeal and, as a consequence, the Court has no jurisdiction to proceed on outstanding motions. No action is taken on outstanding motions, and the court reserves ruling thereon until the Court of Appeals decides the issues on appeal. So Ordered. William C. Crawford, Circuit Judge."

From this record, it is at least arguable that Intervenor's motion sought enforcement of a settlement of all claims against all defendants, or settlement of all of Home's claims against Carmar, or only settlement of Home's Count I claim against Carmar. Likewise, this judgment could conceivably be read to preclude Home from proceeding against Carmar on Count I, or from proceeding against Carmar on both Counts I and II, or against all defendants on all counts.

It should be noted that the judgment does not specify the amount awarded nor how it is to be divided. Thus, even if the trial court viewed the alleged settlement as resolving only Count I, the amount of Ray's attorney fees, if any, is not specified. If the trial

---

4. Apparently Home wanted to engage in post-judgment discovery on its claims against other defendants. To accomplish this, it moved the

trial court to lift a previously entered stay order on discovery.

**568**

court viewed the settlement as being a compromise of all claims against Carmar, the amount allocated to each count is not specified. Such division would be necessary before there could be any consideration of a possible *Ruediger* claim for attorney fees on the subrogation claim. Clearly, no *Ruediger* claim would lie for any portion of the settlement attributable to the fraud claim. Similarly, if the trial court viewed the settlement as encompassing all defendants, allocation of settlement amounts to each claim would be necessary before any attorney fee claim could be considered regarding the subrogation claim. Execution could not possibly issue without resolution of all this uncertainty. The so-called judgment is indefinite; therefore it is void and unenforceable.

■ The indefiniteness of the judgment is not the only matter preventing us from obtaining jurisdiction, and the trial court's apparent attempt to render a final judgment by invoking Rule 74.01(b) solves nothing.[5] While inclusion of the Rule 74.01(b) language implies that the court entered judgment as to fewer than all of the claims or parties, it does nothing to clarify which claims or parties it applies to. Moreover, "[a] judgment which resolves fewer than all legal issues as to any single 'claim for relief' is not final notwithstanding the trial judge's designation as such." *Committee for Educ. Equality,* 878 S.W.2d at 450[4]. Intervenor's Motion to Enforce Settlement merely added a collateral

action to the pending suit. *See Randall v. Harmon,* 761 S.W.2d 278[1] (Mo.App.1988). In the collateral action, Intervenor's "single claim for relief" seeks specific performance of a settlement agreement. Inextricably intertwined with that single claim are questions about who was released, which of Home's claims were compromised, and what the terms of the settlement were. As those three questions were left unanswered and undisposed of, there was no "ultimate disposition of any individual claim." *See Concepts Communication Management Corp. v. Newhard Cook & Co.,* 829 S.W.2d 554, 556 (Mo. App.1992). Since the purported judgment is not within the purview of Rule 74.01(b), there is nothing to certify as final for an early appeal.

The judgment is neither final nor sufficiently definite; consequently, this court does not have jurisdiction.

The appeal is dismissed.

MONTGOMERY, C.J., and PARRISH, J., concur.

---

5. In pertinent part, Rule 74.01(b) reads: "[W]hen more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."