**MID-STATES SALES COMPANY, INC., Appellant,**

**v.**

**FUGITT BROTHERS LIVESTOCK CO., INCORPORATED, a Corporation; National Livestock Commission Company, a corporation; Calvin Wilkerson and Wayne Engledow, d/b/a Ozark Commission Company, a partnership; James H. Vestal and Barbara E. Vestal, Respondents.**

**No. 22239.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 8, 1998.

Charles E. Weedman, Jr., Michael P. Bandre, Crouch, Spangler & Douglas, Harrisonville, for appellant.

Monte Clithero, Taylor, Stafford, Woody, Clithero & Fitzgerald, Springfield, E. Lawrence Oldfield, Jonathan J. Fox, Oak Brook, IL, for respondents Fugitt Brothers Livestock Co., Incorporated, National Livestock Commission Company, and Calvin Wilkerson and Wayne Engledow, d/b/a Ozark Commission Company.

No appearance for respondents James H. Vestal and Barbara E. Vestal.

---

CROW, Judge.

This case reaches this court in an abnormous posture.

Appellant, Mid–States Sales Company, Inc.,[1] brings this appeal from an "Amended Judgment of Partial Summary Judgment" entered by the trial court February 18, 1998. This opinion henceforth refers to that document as "the putative judgment."

For the reasons set forth hereunder, this court holds the putative judgment unappealable. A chronological account of the events precipitating this appeal is essential to an understanding of that holding.

On August 4, 1989, Appellant tendered a "Second Amended Petition" for filing in the trial court.

On July 24, 1990, the trial court granted Appellant leave to file the Second Amended Petition.

The Second Amended Petition named six defendants, the first of which was "Fugitt Brothers Livestock Co., Incorporated, a corporation."[2] This opinion henceforth refers to that defendant as "Fugitt Brothers."

The second defendant named in the Second Amended Petition was "National Livestock Commission Company, a corporation." This opinion henceforth refers to that defendant as "National Livestock."

The third and fourth defendants named in the Second Amended Petition were "Calvin Wilkerson and Wayne Engledow, d/b/a Ozark Commission Company, a partnership." This opinion henceforth refers to those defendants, collectively, as "Ozark Commission."

The fifth and sixth defendants named in the Second Amended Petition were "James H. Vestal and Barbara E. Vestal." This opinion henceforth refers to those defendants, collectively, as "the Vestals."

The Second Amended Petition averred, inter alia, that on June 12, 1980, the Vestals executed a $228,312 promissory note payable to Appellant, secured by a security agreement on 223 "heifers and cows, together with all increase." The Second Amended Petition further pled that on June 19, 1980, a financing statement was recorded in Webster County, Missouri, showing that the cattle mentioned in the preceding sentence were subject to the security agreement. Additionally, the Second Amended Petition alleged that the Vestals owed "in excess of $75,-000.00" on the note.

The Second Amended Petition sought relief in four counts.

Count I pled that during 1983 and 1984, the Vestals delivered 60 "cows and/or calves" to Fugitt Brothers, that Fugitt Brothers sold said livestock despite Appellant's "perfected purchase money security interest" therein, and that Appellant "received no part of the proceeds of said sale." Count I prayed for judgment against Fugitt Brothers for $45,000 "for conversion of said livestock," together with interest "from the dates of sale."

Count II pled that during 1982 through 1984, the Vestals delivered 77 cows to National Livestock, and that Appellant had a perfected security interest therein. Count II prayed for judgment against National Livestock for $57,550 "for conversion of said livestock," together with interest "from the dates of sale."

Count III pled that during 1980, 1981 and 1983, the Vestals delivered 39 "cows and/or calves" to Ozark Commission, that Ozark Commission sold said livestock despite Appellant's security interest therein, and that Appellant "received no part of the proceeds of said sale." Count III prayed for judgment against Ozark Commission for $29,250 "for conversion of said livestock," together with interest "from the dates of sale."

Count IV pled that the promissory note and security agreement executed by the Vestals provided for "the payment of cost of collection, including a reasonable attorney fee

1. Documents filed by Appellant in the trial court identify Appellant as "Mid–State Sales Company, Inc." A document filed by Appellant in this court identifies Appellant as "Mid–States Sales Company." Exhibits in the record bearing Appellant's printed name identify Appellant as "Mid–States Sales Company, Inc." This court suspects the latter name is most likely correct.

2. Later in the Second Amended Petition, that defendant was referred to as "Fugitt Brothers Livestock Commission Co., Incorporated."

in the event of default." Count IV prayed for judgment against the Vestals for the amount due on the note, together with attorney fees and costs of collection.

While this case was pending in the trial court, Fugitt Brothers, National Livestock and Ozark Commission filed a "Motion for Partial Summary Judgment." It averred that certain depositions and affidavits established that the livestock covered by Appellant's security agreement "was commingled with the livestock received from several other sources, and that identification of the specific livestock which was collateral for [Appellant's] loan is not possible, except for sixteen ... head of cattle." The motion prayed "for partial summary judgment against [Appellant] for all but the sixteen ... head of livestock positively identified as being collateral of [Appellant]."

As reported in the second paragraph of this opinion, the trial court entered the putative judgment February 18, 1998. It provides, *inter alia:*

"1. Plaintiff's First Amended Petition[3] is in three Counts, each Count of which seeks recovery in conversion against one of the defendants for the alleged sale of certain cattle allegedly owned by [the Vestals], and subject to a properly perfected security interest in favor of plaintiff.

. . . .

11. The court finds that there is no material issue of fact that plaintiff can specifically identify only 16 head of cattle collectively sold through defendant commission companies as cattle plaintiff claims to have sold to [the Vestals], and that plaintiff has not and can not adduce any evidence which in any manner indicates it can identify any title or right of property in any cattle allegedly sold by the Vestals through defendants or prove any right to immediate possession of the remaining cat-

tle at the time of sale with the possible exception of 16 head of cattle.

12. ... the court would be compelled to grant a directed verdict in favor of defendants at trial with regard to all but 16 head of cattle allegedly sold through defendant commission companies collectively, and ... defendants are accordingly entitled to a Partial Summary Judgment in their favor and against plaintiff as to all but the 16 head of cattle which plaintiff contends it can specifically identify....

. . . .

It is hereby ordered, adjudged and decreed that Summary Judgment be, and hereby is, granted in favor of defendants and against plaintiff with regard to all counts of plaintiff's First Amended Petition herein, except as to 16 head of cattle which plaintiff contends it can specifically identify ... as cattle sold by plaintiff to [the Vestals], which were subject to plaintiff's security interest and which were allegedly sold without consent through defendant commission companies. This Judgment is intended to and does specifically address only the number of cattle for which the plaintiff may seek recovery against defendants at the trial of this action, and does not limit the claims of plaintiff or the defenses of the defendants in any other respect whatsoever.

It is further hereby ordered, adjudged and decreed pursuant to Missouri Supreme Court Rule 74.01(b) the Court having found no just reason for delay, this judgment is final for purposes of appeal as to the issues determined herein."

Obviously, the first aberration in the record is that the putative judgment ostensibly rules on issues in a "First Amended Petition," while the case is pending on Appellant's Second Amended Petition.[4] This court, upon noting that oddity (and a more

---

**3.** An attentive reader will recognize that at the time the trial court entered the putative judgment, this case was pending on Appellant's Second Amended Petition, which the trial court granted Appellant leave to file July 24, 1990, some seven and a half years before the trial court entered the putative judgment. Why the putative judgment purports to rule on issues in Appellant's First Amended Petition—presumably an

abandoned or superseded pleading—is unexplained in the record. That anomaly is addressed later in this opinion.

**4.** Footnote 3, *supra.* The fragmentary record handed this court contains no First Amended Petition, nor does the record reveal when that pleading was filed.

serious obstacle to appealability, discussed later), issued an order granting Appellant an opportunity to show cause why this appeal should not be dismissed for lack of an appealable judgment.

In response, this court received a "Joint Motion for Reconsideration" from Appellant, Fugitt Brothers, National Livestock and Ozark Commission. That filing cited no authority for the proposition that a judgment addressing issues in an abandoned or superseded pleading is appealable, and this court suspects no such authority exists.

However, this court need not grapple with that problem, as the putative judgment is clearly unappealable for another reason.

In *Committee for Educational Equality v. State,* 878 S.W.2d 446, 450[1] (Mo. banc 1994), the Supreme Court of Missouri explained that an appellate court must, *sua sponte,* determine whether it has jurisdiction to adjudicate an appeal. The opinion declared: "A prerequisite to appellate review is that there be a final judgment." *Id.* at [3].

In that case, as in the instant case, there were multiple claims and multiple parties. There, the trial court undertook to invoke Rule 74.01(b) [5] in an effort to confer appealability on a judgment that did not dispose of any claim in its entirety. *Id.* at 450. The Supreme Court discussed Rule 74.01(b) thus:

> "Rule 74.01(b) permits a trial court to designate as final a judgment 'as to one or more claims but fewer than all claims.' Thus, the minimum unit of disposition is at least one claim. A judgment which resolves fewer than all legal issues as to any single 'claim for relief' is not final notwithstanding the trial judge's designation as such....

... By withholding ruling on part of a claim, questions are left open which, upon full adjudication of the claim by a trial court, may make the order appealed from moot or which, when fully decided, may even change the identity of aggrieved parties.

... The judgment here is not final but is, at most, interlocutory in nature."

*Id.* at 450[4], 451 and 454 (citation omitted).

The Supreme Court dismissed the appeal. *Id.* at 455.

In *Albright v. Kelley,* 926 S.W.2d 207 (Mo. App. S.D.1996), this court, in obedience to *Committee for Educational Equality,* dismissed an appeal where the judgment appealed from did not dispose of all issues as to any one of the claims, even though the trial court apparently endeavored to confer appealability per Rule 74.01(b). *Id.* at 209. This court held:

> "A judgment ... which resolves fewer than all legal issues as to any single claim is not a final judgment and may not be separately appealed even if the trial court makes the designation authorized by Rule 74.01(b)."

*Id.* at [7].

This court emphasized in *Albright* that because the judgment was not appealable, this court lacked jurisdiction to do anything other than dismiss the appeal. *Id.* at 210.

In the instant case, the putative judgment is nothing more than an interlocutory ruling by the trial court that Appellant cannot prevail against Fugitt Brothers, National Livestock or Ozark Commission "except as to 16 head of cattle which [Appellant] contends it can specifically identify." All four counts of the Second Amended Petition remain pending; no count is adjudicated. What recov-

---

**5.** The current version of Rule 74.01(b), Missouri Rules of Civil Procedure, took effect January 1, 1988, and remains unchanged. *See:* Order of Supreme Court of Missouri, vol. 727–728 S.W.2d, Missouri Cases, paragraph 6, pp. XXVII–XXXIV. Rule 74.01(b) reads:

> "When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties

only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

ery, if any, Appellant may make on any count remains unresolved.

This court is constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const., Art. V, § 2 (1945); *Stephens v. Brenton,* 920 S.W.2d 109, 111[2] (Mo.App. S.D.1996). Accordingly, this appeal must be dismissed.

In a mildly amusing scrap of irony, the "Joint Motion for Reconsideration," mentioned earlier in this opinion, avers that a ruling by this court on the "controversy" presented by this appeal is "in the interest of judicial economy."

This court wistfully observes that counsel interested in aiding judicial economy can do so by determining, before embarking on an appeal, whether the ruling they seek to appeal is appealable. Had counsel done so in this case, this court would have been spared the time it spent (a) examining the record, (b) noting, *sua sponte,* the probable lack of appellate jurisdiction, (c) issuing the order referred to earlier in this opinion, (d) studying the "Joint Motion for Reconsideration," and (e) preparing this opinion.

Appeal dismissed.

PREWITT, P.J., and PARRISH, J., concur.