**GUTENSOHN et al. v. KANSAS CITY SOUTHERN RY. CO. et al.**

No. 12679.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1944.

Hugh M. Bland, of Fort Smith, Ark., for appellants.

Ray Bond, of Joplin, Mo. (F. H. Moore, W. E. Davis, and C. H. Rimann, Jr., all of Kansas City, Mo., on the brief), for appellee Kansas City Southern Ry. Co.

John H. Flanigan, of Carthage, Mo. (Thomas J. Cole, of St. Louis, Mo., and McReynolds & Flanigan, of Carthage, Mo., on the brief), for appellee Guy A. Thompson, trustee of Missouri Pacific R. Co.

Before THOMAS and JOHNSEN, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

Sixty-eight individuals, plaintiffs below, appellants here, who had been employees of the Fort Smith & Western Railway Company and thereafter of the receiver of that company, brought action in a state court under the Missouri Act (R.S.Mo. 1939, Art. XIV, Secs. 1126–1140, Mo.R. S.A.) praying a declaration that each was entitled to a judgment against The Kansas City Southern Railway Company and the trustee of Missouri Pacific Railroad Company, defendants below, appellees here, in

a named amount. The total sum asked to be declared owing to plaintiffs was $304,-139.50. The case was removed to the district court.[1] The defendant, The Kansas City Southern Railway Company, filed a motion to dismiss the petition for failure to state facts entitling plaintiff to the relief prayed. The defendant, the trustee of Missouri Pacific Railroad Company, filed a motion to dismiss for want of jurisdiction and for lack of venue. From the order of the district court dismissing the petition plaintiffs appealed.

It is alleged in the petition that plaintiffs are entitled to the benefits of what is called the "Washington Agreement," a contract entered into May 21, 1936, between certain carriers and their employees. The "Washington Agreement" is set out in an exhibit attached to and made a part of the petition. Its declared purpose is "to provide for allowances to defined employees affected by coordination [of carriers]." "Coordination" is defined as "joint action by two or more carriers whereby they unify, consolidate, merge or pool in whole or in part their separate railroad facilities or any of the operations or services previously performed by them through such separate facilities." The agreement provides that—"Any employee of any of the carriers participating in a particular coordination who is deprived of employment as a result of said coordination shall be accorded an allowance * * *." A method for determining the amount and duration of each such allowance is set out in the "Agreement."

Having alleged that plaintiffs were employees of the receiver of the Fort Smith and Western Railway Company, that they are entitled to the benefits provided for in the "Washington Agreement" for employees of "carriers participating in a particular coordination," the petition alleges, not that the Fort Smith and Western Railway Company and its receiver participated in any coordination, but that the *defendants* effected a coordination of their respective roads. It is alleged that defendants accomplished coordination by purchasing the properties of the Fort

---

[1] The case was removed and remand was denied on the theory that the controversy arises under a "law regulating commerce." Tit. 28 U.S.C.A. §§ 71, 41(8). Indeed the petition asserts for plaintiff rights "under the laws enacted by the Federal Congress." What laws are meant is not specified. The court below and defendants conceived they were laws regulating commerce. Plaintiffs apparently have acquiesced in that conclusion since no contention has been made in this court that the case should have been remanded.

Smith and Western Railway Company at receiver's sale. By purchasing "key portions" of the Fort Smith and Western directly connecting "defendants' respective tracks and facilities," defendants brought about, it is alleged, their consolidation and coordination.

1. We consider first whether the order sustaining the motion of The Kansas City Southern to dismiss the petition for failure to state facts entitling plaintiff to relief was rightly entered. The problem is, if the facts alleged in the petition are taken as true, was there any such "coordination" of defendants as entitles the employees, not of the defendants or one of them, but of *the receiver of a third railway company* to the allowances provided for in the "Washington Agreement?"

 A reading of the "Agreement" immediately suggests that employees in the position of plaintiffs are not within its coverage under the facts alleged in the petition. The benefits of the "Agreement" are for employees of "carriers *participating* in a * * * coordination," that is, where by their *"joint* action * * * *they* unify * * * *their* separate railroad facilities." But the facts here, as alleged in the petition, are that plaintiffs were not and never were employees of either of the two carriers charged to have effected a coordination. By what argument then do plaintiffs avoid the effect of the obvious interpretation of the Agreement? [2]

 The argument is that there was "coordination between *The Fort Smith & Western Railway Company* and The Kansas City Southern Railway Company and Missouri Pacific Railroad Company," when the two companies last named purchased at receiver's sale separate properties of the first named company. But that argument departs from the petition. The petition does not charge that either The Fort Smith & Western Railway Company or its receiver participated in any coordination. On the contrary, it charges that the de-

fendants conspired and coordinated between themselves "against the employer of these plaintiffs" and that they effected the "coordination of defendants' roads" by purchasing the properties of The Fort Smith & Western Railway Company at receiver's sale. Certainly a petition can not be amended, after a motion to dismiss has been sustained, by enlarging in a brief the theory which the petition presents. And if the theory advanced in the brief had been embodied in the petition probably it would not be sound. To develop that thought, however, would constitute a departure from the issues raised on this appeal.

 2. The order of the district court sustaining The Kansas City Southern's motion to dismiss and dismissing the petition as to that defendant was clearly right. The motion of the trustee of Missouri Pacific, which also was sustained by the district court, did not challenge the sufficiency of the allegations of the petition, but asserted lack of jurisdiction and lack of venue. Plaintiffs in effect concede in their brief that the state court, whence the case was removed to the district court, did not have venue. If so, the district court did not acquire venue. But, of course, the petition cannot be dismissed on that account; only the service of process might be quashed, with the possibility of obtaining service on a new summons issued out of the district court.

 The trustee's motion to dismiss for want of jurisdiction presents the theory that since the Missouri Pacific is in bankruptcy [3] only the court having jurisdiction of the bankruptcy proceeding, the district court for the Eastern District of Missouri, has jurisdiction of any such case as this brought against the trustee. The statute, 11 U.S.C.A. § 205, sub. a, provides that during the pendency of a reorganization proceeding in bankruptcy the district court in which the proceeding is pending shall "have exclusive jurisdiction of' the debtor and its property wherever located." The contention that *a declara-*

---

[2] Plaintiffs in their brief characterize the obvious interpretation of the "Agreement" as narrow and technical, as an interpretation resulting from "legal niceties." But the reasonable desire not to be narrow and technical, not to indulge in "legal niceties," cannot justify an interpretation of the "Agreement" which its words will not support, which indeed is supported only by an argument as to what the parties to the "Agreement" *ought* to have undertaken to put into it.

[3] In this opinion we have assumed that Missouri Pacific Railroad Company is in bankruptcy. Extra-judicially we know that to be a fact. It is not shown by anything in this record.

*tory judgment against the trustee* would constitute interference with the court's "jurisdiction of the debtor and its property" cannot be .successfully maintained. It is not earnestly pressed. Only one case is cited in support of the contention. That case, which we discuss in the margin,[4] is not in point.

That the exclusive jurisdiction "of the debtor and its property" given by Section 205, sub. a to the court in which the reorganization petition is filed was not intended to imply denial of jurisdiction of suits commenced after the approval of the petition, even against the debtor (the present suit is against the trustee), appears clearly from Section 205, sub. j which authorizes injunction, in judicial discretion, against the prosecution of such a suit. In judicial discretion injunction may be denied and the suit may proceed. Here is recognition that jurisdiction of such a suit, if otherwise existing, is not affected. Indeed the Supreme Court has said in the discussion of exactly similar provisions in Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, that—"The exclusive jurisdiction given the court over the debtor and his property * * * does not imply that the commencement or the carrying on of suits against the debtor must be enjoined * * *. The granting or withholding of injunction is left to the discretion of the court." Foust v. Munson S. S. Lines, 299 U.S. 77, 83, 57 S.Ct. 90, 93, 81 L.Ed. 49.

In no event, it seems to us, could a mere declaratory judgment against the trustee—and no more than that was or could be sought by plaintiffs under the Missouri Declaratory Judgment Act—involve any direct or immediate interference with "the debtor and its property." Such a judgment only could "declare rights, status, and other legal relations." R.S. Mo.1939, Sec. 1126, Mo.R.S.A. "A declaratory judgment or decree is one which simply declares the rights of the parties or expresses the opinion of the court on a question of law, without ordering anything to be done; its distinctive characteristic being that the declaration stands by itself, and no executory process follows as of course; and the action therefor is distinguished from other actions in that it does not seek execution or performance from the defendant or opposing parties." 1 Corpus Juris Secundum, Actions, § 18, p. 1018.[5]

3. The order of the district court dismissing the petition for failure to state a cause of action as to The Kansas City Southern Railway Company was clearly right and should be affirmed. If the trustee of Missouri Pacific Railroad Company had filed a similar motion it would have been the duty of the district court to sustain that motion and to have dismissed the case as to the trustee also. But the district court had no jurisdiction to dismiss the case for failure to state a cause of action as to the trustee without hearing the plaintiffs and the plaintiffs were not heard on the issue: Has a cause of action been stated against the trustee? Plaintiffs were not heard on that issue, because the trustee did not present that issue. Had it been presented, undoubtedly the district court would and should have resolved it as it did resolve the ·same issue presented by The Kansas City Southern Railway Company. The district court would not be justified in dismissing ex mero motu the petition for failure to state a cause of action. The trustee should have opportunity to file a motion to dis-

---

[4] Jennings v. Pennsylvania Public Utility Commission et al., 140 Pa.Super. 569, 14 A.2d 882, the case cited, was decided by the Superior Court of Pennsylvania July 19, 1940. A Pennsylvania railroad company had filed an application with the Utility Commission for leave to abandon a part of its line. Thereafter it petitioned for reorganization under the Bankruptcy Act. Jennings was appointed trustee of the company. An order of the commission to require the trustee to remove from highways the rails, etc., of the abandoned part of its line (the abandonment had been unconditionally authorized) was resisted by him on the theory that the U. S. district court had exclusive jurisdiction. The court held that the federal court did have exclusive jurisdiction to order the removal of rails and other impedimenta. Such an order could be carried out only by the expenditure of company funds. The case is in point as to any order or judgment of any commission or court *directly* requiring the expenditure of money by a trustee out of the property of a company in reorganization. It is not in point as to an order or judgment out of which a right to execution would not arise. In any event, of course, the case is not controlling.

[5] A search of the Missouri cases does not reveal any which construes the Missouri Act otherwise than is set out in Corpus Juris Secundum.

954

miss and plaintiffs should have opportunity to be heard in opposition to such a motion.

In so far as the judgment appealed from concerns The Kansas City Southern Railway Company, it is affirmed. In so far as it concerns the trustee of Missouri Pacific Railroad Company, it is reversed and the cause remanded for further proceedings in accordance with this opinion.