**STATE ex rel. Clay CHASTAIN, et al., Respondents,**

v.

**CITY OF KANSAS CITY, Missouri, et al., Appellants.**

**No. WD 53460.**

Missouri Court of Appeals, Western District.

Submitted Feb. 10, 1998.

Decided May 5, 1998.

William D. Geary, Kansas City, for Appellant City of Kansas City.

Stanley D. Davis, Kansas City, for Appellant Union Station Assistance Corp.

Daniel L. Franco, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and ELLIS and SMART, JJ.

SMART, Judge.

Before this Court is the consolidated appeal of the City of Kansas City and the Union Station Assistance Corporation, both of whom appeal the trial court's issuance of a peremptory writ of mandamus on October 13, 1996. In the writ order, the court directed the City to take the steps necessary to cause the initiative proposed by Respondents to be placed on the November 5, 1996 ballot. Finding that the controversy is moot and does not fall within the recognized exceptions to the rule demanding dismissal of moot cases, we dismiss the consolidated appeal of City and USAC and vacate the trial court's judgment.

### Factual Background

The present case arose from the prolonged effort to restore Kansas City's historic Union Station. In the 1970s, the City of Kansas City ("City") and Trizec Corporation entered into a contract to redevelop Union Station. Having become dissatisfied with Trizec's performance by 1988, the City instituted a suit to recover damages for Trizec's alleged failure to perform its obligations under the redevelopment contract. On January 6, 1994, the City, acting through the City Council, passed Ordinance 940028, which authorized the City Attorney to execute a settlement agreement reached in the Trizec litigation. The terms

of the settlement agreement required Trizec to convey Union Station to Union Station Assistance Corporation ("USAC"), a new non-profit corporation dedicated to the renovation of Union Station. The same ordinance also made provision for a new plan to redevelop Union Station by authorizing the City to enter into a development agreement ("Agreement") with USAC for the purpose of restoring Union Station.

The Agreement was executed on June 28, 1994. USAC agreed to accept the terms of the settlement agreement between City and Trizec. The City and USAC agreed that USAC would be responsible for devising design, construction, and funding plans for the project. These plans were to be submitted to a designated agent of the City for approval. The City also gave USAC complete and exclusive control of the work so long as the Agreement remained in effect.

On April 29, 1994, Respondent Clay Chastain brought an action in Jackson County Circuit Court seeking a determination that Ordinance 940028 was illegal and praying for injunctive relief, including a temporary restraining order ("TRO") to prevent implementation of the terms of the ordinance. On May 11, 1994, the trial court denied the TRO and dismissed the action with prejudice.

Respondents then commenced an effort to put before the voters of Kansas City a new ordinance that would have extended the City's 1/2 cent sales tax for five years beginning on January 1, 2001, and would have provided the tax revenue exclusively to the Liberty Memorial and the Union Station redevelopment efforts. Because the full effect of the text of the proposed ordinance was disputed at trial, we allow the proposed ordinance to speak for itself:

> Shall the City of Kansas City, Missouri continue to impose a city sales tax of one half percent, effective for five years from January 1, 2001 through December 31, 2005, to be used solely for the restoration of Liberty Memorial as a World War I museum and memorial and Union Station as a transportation and science center, which shall include preserving completely intact the Head House, East Wing, West Wing and North Wing of the Union Station, with 25% of the sales tax proceeds each year to be used for Liberty Memorial restoration and the remaining 75% of the sales tax proceeds each year to be used for Union Station restoration, including use of the sales tax proceeds to retire bonded indebtedness whether incurred before or after the effective date of the sales tax?

The Respondents submitted petitions containing the signatures of 4,670 registered Kansas City voters in favor of placing the proposal on the August 1995 ballot to the City Clerk. Because this number constituted more than 5% of the voters who voted in the most recent mayoral election, as required by the Kansas City Charter for ballot initiatives, the Clerk certified the petitions as being sufficient. The Charter allows the City Council 60 days to study the proposed initiative before it must pass the proposed initiative in its original or amended form or place the initiative on the ballot. The City Council failed to act before the expiration of the 60-day period, which extended beyond the August 1995 election date.

On August 31, 1995, the Respondents filed suit in the Circuit Court of Jackson County against the City, the Mayor of Kansas City, various members of the City Council, the City Clerk, and several board of election commissioners responsible for conducting city elections. The Respondents sought (1) a writ of mandamus ordering the City to place the proposal on the November 7, 1995, ballot, and (2) damages from the City and the Council members under 42 U.S.C. § 1983 for the alleged deprivation of the right to present the initiative to the voters.

The trial court held a hearing on September 6, 1995. On September 13, 1995, the court issued an order requiring the City to place the proposal on the August 1996 ballot. The defendants moved for reconsideration of the order, and USAC moved to intervene. The court granted USAC's motion for intervention on February 8, 1996. In its first amended answer of February 21, 1996, USAC filed a cross-claim against the City, alleging anticipatory breach of contract and praying for specific performance of the contract.

The court took additional evidence on September 16, 17, and 19, 1996. On October 3, 1996, the court issued a peremptory writ of mandamus directing the City to take the steps necessary to place the proposal on the November 5, 1996, ballot. In the same order, the court dismissed without prejudice the damages claim against City and the members of the City Council. On October 4, 1996, the City filed a motion to amend the order by removing a specific election date and substituting a reference to "the next appropriate municipal or state election." The trial court denied this motion to amend on October 17, 1996. The City and USAC filed these appeals on October 21, 1996. That same day, USAC posted the $5,000 supersedeas bond fixed by the trial court for stay of the execution of the writ. The initiative did not appear on the ballot in any of the City's election jurisdictions on November 5, 1996. This Court consolidated the appeals on November 14, 1996.

The Respondents subsequently commenced a second petition drive to get a substantially similar ordinance on the November 4, 1997 ballot.[1] Their efforts were successful, and the City Council voted to place both the earlier and the later proposed ordinances, which were practically identical, on the November 1997 ballot. Fearing voter confusion from the placement of two almost identical proposed ordinances on the same ballot, Respondents sought to eliminate the first proposed ordinance so that only the second would appear on the ballot for November of 1997. City and Respondents executed an agreement on September 17, 1997 containing the following relevant language:

The Committee of Petitioners has determined that placement of the first matter on the November 4, 1997 ballot is not desired now or in the future. The City of Kansas City has determined that placement on the ballot is not necessary if the Committee of petitioners will not require placement of the first matter before the voters should the Missouri Court of Appeals find that the matter should be presented to the voters.

Both parties agreed that the removal of the first proposed ordinance from the November 1997 ballot was done "with no intention to waive any claim or defense the parties may have relating to any legal issue now or in the future before a court."

On December 19, 1997, Respondents refiled their damage claim against City and members of the City Council in Jackson County Circuit Court. Respondents allege that the defendants breached their duty to place the ordinance on the ballot in 1995 and seek compensatory damages, punitive damages, and attorney fees. That claim was still pending as of the submission of the present appeal.

In its appeal, City raises four allegations of trial court error: (1) the proposed ordinance should have been required to meet the more stringent procedural requirements for a referendum rather than the easier requirements for an initiative; (2) the proposed ordinance contained administrative issues that may not be submitted to voters in an initiative; (3) the proposed ordinance was facially illegal in that it impaired USAC's vested contract rights under Ordinance 940028 and the Agreement; and (4) the statutory deadline

1. The second proposed ordinance read as follows:

Shall the City of Kansas City, Missouri, extend an existing one-half (1/2) percent city sales tax, effective for five years commencing from January 1, 2001, through December 31, 2005, to be used for the designated purpose of creating a multi-modal Public transportation centre inside Union Station, whose owner is the Union Station Assistance Corporation, and for restoration of Liberty Memorial as a World War I museum and memorial; with seventy-five (75) percent of the sales tax proceeds each year to be used to expand, construct, furnish and equip Union Station as a multi-modal public transportation centre and all things necessary or incidental to this project, and the remaining twenty-five (25) percent of the sales tax proceeds each year to be used for restoring Liberty Memorial, including use of the sales tax proceeds to retire bond indebtedness whether incurred before or after the effective date of the tax?

The second proposed ordinance differs from the first in only two significant respects: (1) the second ordinance does not require the sales tax proceeds to be used "solely" for the restoration of Union Station a "transportation and science center", and (2) the second ordinance does not require that any part of the original structure of Union Station be preserved "completely intact."

for giving notice to election authorities under § 115.125, RSMo Supp.1996, had already passed prior to the trial court's order to place the proposed ordinance on the November 5, 1996, ballot.

USAC's original appeal brief raised many of the same arguments while also citing additional alleged errors the trial court made in issuing the peremptory writ of mandamus. As its final point of error, USAC contends that the trial court erred in dismissing USAC's cross-claim against the City for anticipatory breach of contract. After filing its original brief, however, USAC filed a supplemental brief praying this court for dismissal of the appeal as moot. USAC cites the agreement entered into by the City and Respondents as to the November 1997 ballot as the event that mooted this appeal.

### Mootness

 The mootness of a controversy is a threshold question in any appellate review of that controversy. See *State ex rel. Kirkpatrick v. Board of Election Comm'rs of St. Louis County*, 686 S.W.2d 888, 890 (Mo.App. 1985). "With regard to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy." *Gilroy–Sims & Assocs. v. City of St. Louis*, 697 S.W.2d 567, 569 (Mo.App.1985). Because mootness implicates the justiciability of a case, the court may dismiss a case for mootness *sua sponte*. *See Grassmuck v. Autorama Auto Equip. & Supply Co.*, 659 S.W.2d 264, 266 (Mo.App.1983). When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed. *State ex rel. Donnell v. Searcy*, 347 Mo. 1052, 152 S.W.2d 8, 10 (banc 1941); *State ex rel. Hooker v. City of St. Charles*, 668 S.W.2d 641, 643 (Mo.App.1984). We do not decide questions of law disconnected from the granting of actual relief. *Committee for Educ. Equality v. State*, 878 S.W.2d 446, 454 (Mo. banc 1994). In considering the possible mootness of a controversy, an appellate court may consider matters outside of the record. *State ex rel. Wilson v. Murray*, 955 S.W.2d 811, 812 (Mo.App.1997). While courts usually should not decide moot cases, a court has discretion to review a moot case when the case presents an unsettled legal issue of public interest and importance of a recurring nature that will escape review unless the court exercises its discretionary jurisdiction. *Citizens for Safe Waste Management v. St. Louis County Air Pollution Control Appeal Bd.*, 896 S.W.2d 643, 645 (Mo.App.1995). This exception, however, is narrow. If an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of appellate review, then the "public interest" exception does not apply. *See State ex rel. Missouri Cable Television Assoc'n v. Missouri Pub. Serv. Comm'n*, 917 S.W.2d 650, 652 (Mo.App.1996).

The trial court's peremptory writ of mandamus required compliance by a specific date, November 5, 1996. Execution was stayed by supersedeas bond pending appeal. Therefore, with the passing of that specific date, the extraordinary relief granted by the trial court had no practical effect on the controversy between the parties. The writ, for all intents and purposes, expired.

 Ordinarily, an expired order presents a moot subject for appellate review. However, we are not certain that the passing of the date specified in the order alone mooted this appeal. A peremptory writ of mandamus has the character of an execution and a judgment. *State ex rel. Brooks v. Crain*, 263 S.W.2d 368, 369 (Mo. banc 1953). All matters of law and fact which could have been pleaded in defense prior to the award of a peremptory writ are foreclosed thereby. *Heather v. City of Palmyra*, 317 Mo. 1320, 298 S.W. 750, 755 (banc 1927); *see also* 55 C.J.S. *Mandamus* § 355 (1948). The passing of the specified election date made future compliance with the order impossible and the bonded stay removed any possibility of a contempt citation for non-compliance.[2] With the "teeth" of the judgment thereby re-

2. If there had been no stay of the execution of the writ, there would be some theoretical possibility of contempt citations, and thus a decision in the issues raised on this appeal could have some practical significance in this controversy to the extent those issues implicated the jurisdiction of the trial court to issue the writ.

moved, the trial court's judgment in this case became, in essence, a declaratory judgment of the rights of the parties to the dispute.[3] The judgment declared the City's legal obligation to place the proposed ordinance on the ballot in the future. The specific date was apparently not very important to the Respondents, who had originally sought to have the ordinance placed on the ballot in 1995 and who would subsequently petition for a substantially similar ordinance to be placed on the 1997 ballot. But for the events that transpired between the filing of this appeal and its submission to this court, there would be every reason to expect that, if the writ were not reversed on appeal, Respondents subsequently would have used the valid October 3, 1996, judgment to force the City to place the ordinance on a future ballot.

### The City and the Respondents Mooted the Appeal By Their Agreement

■ Later events brought to the attention of this court by City and USAC prior to submission cause us to conclude that a continuation of this controversy is extremely unlikely. Because the trial court's October, 1996, writ of mandamus was stayed pending appeal, there was little if any prospect of the proposed ordinance being placed on the ballot without the order being affirmed on appeal. In the meantime, Respondents opted to circulate a new petition to place substantially the same ordinance on the ballot in 1997. When the City Council voted to place both proposed ordinances on the November, 1997, ballot, Respondents objected, fearing that both proposed ordinances would fail due to voter confusion over two distinct, yet substantially identical, ordinances appearing on the same ballot. The parties concluded an agreement to remove the first proposed Un-

ion Station ordinance (designated Ordinance 971236) from the November 1997 ballot, leaving the second proposed ordinance (designated Ordinance 971192) on the same ballot. Reading the language of that agreement in light of the circumstances as we understand them, we infer that the intention of the parties in removing the first of the two proposed Union Station ordinances from the November 4, 1997 ballot was to exchange the prospect of a confused and inconclusive vote on Respondents' Union Station redevelopment plan for the prospect of a clear and conclusive vote on that plan.[4] The agreement was fulfilled, and the second proposed ordinance was rejected by the voters of Kansas City on November 4, 1997. The Respondents have no apparent desire to place their Union Station sales tax proposal before the voters again. This inference was confirmed by the concession made by Respondent's attorney at oral argument that the case was now moot.

### The Issue is One of Public Importance

The City urges this Court to decide this case due to the issue's likelihood of recurrence. Appellate courts have the discretion to decide moot cases which present issues of public importance when those issues are likely to evade appellate review on their recurrence. *Missouri Cable Television Assoc'n*, 917 S.W.2d at 652.

■ The City wishes this court to construe the Kansas City Charter, most particularly the sections setting out the procedural requirements for the referendum and the initiative, §§ 426–29 (initiative), 430–34 (referendum). Under section 430 of the charter, notice of a referendum to repeal an ordinance must be given to the City Clerk within ten days of the enactment of that ordinance

---

3. The "distinctive characteristic of a declaratory judgment is that the declaration stands by itself, and no executory process follows as of course; and the action therefor is distinguished from other actions in that it does not seek execution or performance from the defendant or opposing parties." *Gutensohn v. Kansas City S. Ry. Co.*, 140 F.2d 950, 953 (8th Cir.1944).

4. `The agreement contains Respondents' declaration that "placement of the first matter on the November 4, 1997 ballot is not desired now or in the future." On its face, this sentence says noth-

ing about the intention of Respondents as to the placement of the first ordinance on the ballot after November 4, 1997. This is consistent with the later paragraph in which the parties declare that they waive no claim or defense by agreeing on removal of the first ordinance. However, we believe that in the context of the whole agreement and the circumstances, Respondents expressed a desire never to press the matter of the first Union Station ordinance if they were permitted to go to the voters on the second proposed ordinance alone.

and must be endorsed by the signatures of more than 10% of the voters who voted in the last mayoral election. Section 426 of the charter allows an initiative to be brought at any time and requires that the petition be endorsed by the signatures of more than 5% of the voters who voted in the last mayoral election. If we confirm that the Charter allows for what is, in effect, the repeal of prior ordinances through the initiative procedure, that will make it much easier for citizens to challenge the legislative decisions of the City Council than if they had to comply with the more stringent procedural requirements for a referendum. Given the likelihood that the political and legal struggles over the redevelopment of Kansas City will continue, the declaration of law the City seeks is of public importance. Moreover, the question of whether the proposed ordinance should have been regarded as a referendum or an initiative under the Kansas City Charter apparently does present an unsettled issue of law.[5]

### The Issues May Be Reviewed When They Recur

We fail to see that any issue in this case is likely to evade review in any future controversy. The trial court issued the writ on October 3, 1996. A peremptory writ of mandamus is a final order and as such is appealable. *State ex rel. Selsor v. Grimshaw*, 762 S.W.2d 868, 869 (Mo.App. 1989); *see also Lewis v. Price*, 11 Mo. 398 (banc 1848). The order compelled performance by the November 5, 1996, election, which was

then approximately one month later. The City unsuccessfully moved on October 4, 1996, to modify the writ to remove the reference to a specific date, but City was not required to do so before filing an appeal. The City did not file its appeal until October 21, 1996, and USAC did not file its appeal until October 22, 1996. Neither City nor USAC moved for expedited review of the appeal once filed. Supreme Court Rule 84.02 gives appellate courts the discretionary power to docket appeals, and we have employed the power to expedite appellate proceedings when delay would threaten to moot an appeal, typically in cases involving elections.[6] Had expedited review been unavailable, appellants could have sought an original writ of prohibition from this Court directed to the trial court, at least on the issue of whether the trial court exceeded its authority in ordering the proposed ordinance on the ballot after the notice deadline in § 115.125, RSMo Supp.1996. *See State ex rel. Referendum Petitioners Comm. v. Lasky*, 932 S.W.2d 392 (Mo. banc 1996). Neither appellant sought a writ in this case. The case could have been handled in such a way as to avoid the present mootness problem. We do not believe that subsequent cases presenting some or all of the same issues will necessarily evade this court's scrutiny.[7]

### The Existence of the Separate Damages Action Does Not Create Jurisdiction to Decide the Merits

In another attempt to persuade the court to decide this moot appeal, the City

5. Having cursorily reviewed the case law, we do not see that the sections of the Kansas City Charter setting out the different procedural requirements for a referendum and an initiative have been construed by Missouri courts to determine when each procedure is applicable. Missouri courts have decided this question under two other municipal charters: the City of Saint Louis charter in *State ex rel. St. Louis Regional Health Care Corp. v. Wamser*, 735 S.W.2d 741 (Mo.App.1987), and the University City charter in *State ex rel. Klayman v. Baine*, 622 S.W.2d 757 (Mo.App.1981). These cases appear to constitute what little relevant Missouri authority exists on this question.

6. *See, e.g., State ex rel. City Council of Gladstone v. Yeaman*, 768 S.W.2d 103, 105 (Mo.App.1988) (appeal and cross-appeal filed by September 29, 1988, in case involving writ ordering City to

place names on November 8, 1988, ballot for recall vote; case submitted on October 12, 1988).

7. One issue [whether the trial court's order violated § 115.125, RSMo Supp.1996 (effective June 13, 1996), which commands the officer or agency calling an election to notify the election authorities no later than the eighth Tuesday prior to an election of an issue to be placed on the ballot] was settled in *State ex rel. Referendum Petitioners Comm. v. Lasky*, 932 S.W.2d 392 (Mo. banc 1996). In *Lasky*, the court prohibited the trial court from ordering election authorities to place a referendum proposal on a ballot almost one month after the expiration of the notice period required by § 115.125. Were we to decide this case, *Lasky* might require that we reverse on that narrow issue, which would mean we still would not be able to address the substantive issue which City desires this court to resolve.

mentions the fact that the Respondents have refiled their 42 U.S.C. § 1983 damages action against the City and various members of City government (earlier dismissed without prejudice) in Jackson County Circuit Court. The City argues that this court will be forced to consider many or all of the issues raised by City in this appeal sooner or later, so we should choose to decide them sooner. The damages action is a separate proceeding brought under federal statutes. While there may be overlap as to certain issues, the issues in the damages action are not identical to those in this action, which was brought under state law to vindicate alleged rights created by the Kansas City charter. City does not argue that we must review and reverse the judgment because of the possibility of issue preclusion (by collateral estoppel) on the issue of whether Respondents' rights were violated. City simply suggests that in the interest of judicial economy we should review the issues at this point. However, City fails to provide authority for the notion that interests of judicial economy, standing alone, warrant deciding a non-justiciable matter. We are not persuaded that we have authority to decide this case on the merits.

### Disposition of the Trial Court's Judgment

Having decided the appeal is moot, we now turn to the argument of USAC that this court should also vacate the trial court's judgment. USAC does not claim that the case was moot when the trial court entered its judgment. Rather, USAC has expressed two other concerns with the Court allowing the trial court's judgment to stand: (1) USAC will be bound by the judgment in any subsequent action that arises out of the proposed ordinance; and (2) the continued existence of a valid judgment ordering the proposed ordinance to be placed on the ballot creates uncertainty and interferes with USAC's efforts to obtain financial support for the renovation of Union Station. City has not specifically requested vacation of the judgment below, preferring instead to seek a decision on the merits.

In disposing of cases that have become moot on appeal, Missouri courts have sometimes chosen simple dismissal of the appeal, and sometimes chosen to join the appeal with an order to vacate the lower court's judgment. In *Fugel v. Becker*, 2 S.W.2d 743 (Mo. banc 1928), the Missouri Supreme Court stated that when cases become moot on appeal, the "appeal or writ of error will either be dismissed or the cause will be remanded with directions to vacate the judgment and dismiss or grant other appropriate relief." *Id.* at 746 (*quoting* 3 C.J. 357). In *Fugel*, the court held that the trial court's injunction was moot when made permanent and even more moot on appeal. *Id.* at 746–47. The court reversed the judgment and remanded the case to the trial court with directions to dismiss. *Id.* at 747.

While in subsequent cases simple dismissal appears to have been the more common method of disposal,[8] there are a few relatively recent cases where Missouri courts have gone further and vacated the lower court's judgment. *See State ex rel. Antonio v. Bank of Lee's Summit*, 676 S.W.2d 240, 241 (Mo. banc 1984); *Krohn v. Redings Mill Fire Dept.*, 893 S.W.2d 399 (Mo.App.1995). There appears to be little factual distinction between the former and latter cases. No Missouri case has provided substantial discussion of the issue.

### The Decision To Vacate Is Not Dependent On Lack Of Justiciability In The Trial Court

■ One conclusion is clear, however: the decision to vacate the trial court's judgment does not depend on whether the controversy was justiciable when the trial court's judgment was entered. In *Bank of Lee's Summit*, there was no doubt that the trial court had the jurisdiction to enter the injunction appealed. The Missouri Supreme Court nevertheless vacated the trial court's judgment and dismissed the appeal as moot. *Bank of Lee's Summit*, 676 S.W.2d at 241. The court in *Bank of Lee's Summit* did not

---

8. *See, e.g., State ex rel. Wilson v. Murray*, 955 S.W.2d 811, 813 (Mo.App.1997); *Gilroy–Sims & Assoc. v. City of St. Louis*, 697 S.W.2d 567, 570 (Mo.App.1985); *Magruder v. Petre*, 690 S.W.2d 830, 833 (Mo.App.1985); *State ex rel., Hooker v. City of St. Charles*, 668 S.W.2d 641 (Mo.App. 1984).

explain why it chose to vacate the trial court's injunction directing the bank to release financial records to the State Auditor, although it may be significant that the mooting event, the bank's decision to comply with the injunction, was completely beyond the control of the depositors who had appealed the injunction. Similarly, in *Krohn*, the trial court had the jurisdiction to grant a new trial as to one of two defendants where the jury had found only the other defendant to be liable. The other defendant's subsequent satisfaction of the judgment encompassing all of plaintiff's damages, an act outside of the appellant's control, mooted the appeal of the grant of new trial. The court vacated the order for new trial and remanded to the trial court to dismiss the claim against the appellant. *Krohn*, 893 S.W.2d at 400. The court drew no attention to the fact that the appeal was mooted by the actions of the other defendant. Preclusion effects were neither discussed nor evident in either *Bank of Lee's Summit* or *Krohn*. And in neither case is it evident whether that vacation was requested, or considered by the court sua sponte, making it difficult to infer too much from these cases.

The cases where appeals were dismissed as moot but judgments were not vacated fall into two categories. The first category are cases in which it is unclear whether any request was ever made to vacate. The second, and much smaller category, includes the cases in which requests to vacate were made but denied.

Extracting any lessons from the cases in the first category is problematic for two reasons. First, if the disposition of the trial court's judgment was not discussed in those cases, it may have been because no request to vacate was made. If so, then the court quite understandably gave no thought to the issue of whether to vacate the trial court's judgment. Moreover, even if the issue had been considered by the court sua sponte, failure to request vacation may have been regarded as an adequate reason to leave the trial court's judgment intact, as is the federal practice (discussed below). Second, as we have previously noted, these cases are not consistently distinguishable with reference to

any material fact from the cases where vacation was ordered. In *State ex. rel. Hooker v. City of St. Charles*, 668 S.W.2d 641 (Mo.App. 1984), the trial court's writ of mandamus was not vacated where the writ became moot as a result of the appellant's compliance with that writ. *Id.* at 643. The appellant's unilateral action mooted the appeal. As for other recent cases in this category, however, appeals were mooted by events beyond the control of the appellants, often by the passage of time. *See, e.g., Murray*, 955 S.W.2d at 813; *Magruder*, 690 S.W.2d at 832.

The few cases in which an order to vacate was sought but denied provide no meaningful guidance. In *Committee for Educ. Equality v. State*, 878 S.W.2d 446 (Mo. banc 1994), the Missouri Supreme Court denied a prayer to vacate the trial court's judgment on the ground that the order appealed was not a final order, and thus there was nothing to vacate. *Id.* at 454. This court declined an invitation to vacate a judgment in a case that became moot on appeal in *Citizens for Safe Waste Management v. St. Louis County Air Pollution Control Appeal Board*, 896 S.W.2d 643, 645 (Mo.App.1995). The mooting event was a non-party's decision to abandon the activity that required a license issued by respondent. We justified the refusal to vacate simply by citing the decision of the Missouri Supreme Court in *Committee for Educ. Equality, supra.*

Some lessons may be drawn from the preceding cases. Although the few cases where vacation was ordered were cases that had become moot for reasons beyond the control of the appellants, there were many cases where vacation was not ordered after those cases became moot for reasons outside of the control of appellants. The potential preclusion effect of a trial court judgment left intact does not seem to be a distinguishing characteristic.

### Federal Practice: Munsingwear and Bonner Mall

While Missouri authority provides little guidance on this question, other authority vigorously advocates the approach whereby an appellate court dismisses the appeal as moot and vacates the lower court's judgment.

See, e.g., 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3533.10 (2d ed. 1984). The federal practice has long been to dismiss appeals in moot cases and vacate the trial court's judgment where motion is made to vacate the judgment. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950); 13A Charles A. Wright, Arthur K. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.10, at 426. However, the Court recently limited the scope of this rule by holding that settlement of a case by the appellant pending appellate review does not justify vacation. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). In *Bonner Mall Partnership*, the appellant settled the case after the United States Supreme Court had granted its petition for certiorari of an adverse decision by the Court of Appeals. The settlement agreement contained a stipulation that the agreement mooted the case. Appellant moved the Supreme Court to vacate the judgment of the Court of Appeals. Noting that vacatur is an equitable power, the Court reasoned that an appellant who voluntarily moots an appeal through settlement thereby waives the right to complain about any injustice in leaving the lower court's judgment intact. 115 S.Ct. at 392.

## The View That The Court Should Always Vacate The Trial Court Judgment

One of the justifications for vacating trial court judgments in moot cases pending appellate resolution begins with the premise that trial courts and appellate courts are designed to be interdependent components of the judicial system. 13A Wright, Miller & Cooper, Federal Practice § 3533.10, at 425. When a case becomes moot pending appellate resolution, to permit the lower court judgment to stand because an appeal, though timely brought, became nonjusticiable is to ignore the importance of appellate review in promoting the overall effectiveness of the

judicial system.[9] When an appellate court vacates a judgment that could not be reviewed for mootness pending appellate decision, "the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary." *Munsingwear*, 340 U.S. at 40, 71 S.Ct. 104. Despite the temptation to decline to vacate in cases where preclusive effects appear to be unlikely, prediction of preclusive and precedential effects of valid judgments in particular moot cases is difficult. Wright, Miller & Cooper, Federal Practice § 3533.10, at 437. Therefore, a consistent policy of vacation has been recommended. *Id.* Vacation is recommended regardless of whether or not a party requests vacation. *Id.* at 442.

Another set of reasons to vacate judgments may be classified as being equitable in nature. As the Supreme Court observed in *Bonner Mall Partnership*, the historical origins of vacatur are equitable. 115 S.Ct. at 391, 115 S.Ct. 386. *See also Juenger v. Brookdale Farms*, 871 S.W.2d 629, 631 (Mo. App.1994). The primary concern in equity was that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Bonner Mall Partnership*, 115 S.Ct. at 391. From this view, by deciding to settle, the appellant "has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.* 115 S.Ct. at 392. Both the Federal Rule of Civil Procedure 60(b)(5) and the analogous Missouri Supreme Court Rule, Rule 74.06(b)(5), acknowledge the equitable nature of vacation in the context of trial court power to vacate by providing for vacation where "it is no longer equitable that the judgment remain in force."

## The View That Vacatur Should Not Be Granted Without a Specific Request

Appellate review is necessary for the correction of trial errors and the promotion of

---

**9.** The Missouri legislature created an unqualified right to appeal a final judgment in a civil cause. Section 512.020, RSMo 1994. We must conclude that the legislature intended the civil appeal as of right to be important in reducing erroneous outcomes in the adjudication of civil cases. *See* Section 512.160.2, RSMo 1994.

uniformity in the administration of the law. However, it does not follow that unreviewed trial court judgments are inherently suspect. Rather, trial court judgments are viewed as presumptively correct on appeal. Vacatur of those judgments when review has become impossible should depend on the equities of each individual case. Where the trial court had the jurisdiction to enter the judgment appealed from, the power of an appellate court to vacate that judgment after the case becomes moot is, in its essence, an equitable power.

 While we therefore decline to declare a "bright line" rule as to vacatur, we conclude that the normal practice should be to vacate the judgment when one or more parties requests such action in a case moot on appeal. Except where equity demands otherwise, a motion for vacation made by a party who had no control over the mooting event should be granted, at least as to that party. We have the power to vacate a judgment with regard to fewer than all adversely affected parties. This power has been recognized in Missouri law going back at least as early as *Neenan v. City of St. Joseph*, 126 Mo. 89, 28 S.W. 963, 965 (1894). This is consistent with the modern majority rule. *See* Annotation, *Vacation or Setting Aside of Judgment as to One Or More of Multiple Parties against Whom Rendered as Requiring Vacation as to All*, 42 A.L.R.2d 1030, 1031 (1955).

Because City, whose action in settling with Respondents mooted this appeal, has not requested vacation and because vacation as to USAC would not prejudice City, it would be appropriate to vacate the trial court judgment only as to USAC, in accordance with the analysis in *Bonner Mall Partnership*, 115 S.Ct. at 390–93. However, because of the circumstances of this particular case, in which USAC suggests that failure to vacate as to the City may also have an adverse effect on USAC's efforts to raise capital for the renovation of the Union Station, we will elect on equitable grounds to vacate the trial court judgment in its entirety.

## Conclusion

Having concluded that this case is moot and does not fall within the public interest exception to the mootness doctrine, we dismiss the consolidated appeal of City and USAC and remand the case to the trial court with instructions to vacate its judgment.

EDWIN H. SMITH and ELLIS, JJ., concur.