

# In the Missouri Court of Appeals
## Western District

FRED N. SAUER, ANNE GASSEL and )
GRETCHEN LOGUE, )
                        Respondents, )
v. )           **WD78430**
                                         )
JEREMIAH W. (Jay) NIXON, et al, )     FILED: November 17, 2015
                         Appellants. )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE DANIEL R. GREEN, JUDGE

### BEFORE DIVISION TWO: MARK D. PFEIFFER, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND JAMES E. WELSH, JUDGES

Jeremiah W. (Jay) Nixon, et al., ("Appellants")[1] appeal the circuit court's grant of summary judgment in favor of Fred Sauer, Anne Gassel, and Gretchen Logue ("Respondents") on Respondents' petition for declaratory and injunctive relief concerning Missouri's membership in the Smarter Balanced Assessment Consortium ("SBAC").[2] Appellants contend the court erred in entering judgment in

---

[1] Appellants include: Jeremiah W. (Jay) Nixon, in his official capacity as Governor of Missouri; Chris L. Nicastro, in her official capacity as Commissioner of Education; Department of Elementary and Secondary Education; Missouri State Board of Education; Clint Zweifel, in his official capacity as Missouri Treasurer; Office of the Treasurer; Doug Nelson, in his official capacity as Commissioner of Administration; Office of Administration; and the State of Missouri.

[2] In addition to referring to the Smarter Balanced Assessment Consortium, "SBAC" refers to other names for the organization, including Smarter Balanced at UCLA, Smarter Balanced, SB, the University of California, and the National Center for Research on Evaluation, Standards and Student Testing.

favor of Respondents and enjoining Missouri from making member payments to SBAC because its participation as a member of SBAC did not violate the Compact Clause of the U.S. Constitution or any state statutes. For reasons explained herein, we dismiss the appeal as moot and deny, without prejudice, Appellants' request to vacate the circuit court's judgment.

**FACTUAL AND PROCEDURAL HISTORY**

In 2009, the National Governors Association and the Council of Chief State School Officers initiated an effort to develop a national, uniform set of standards in English language arts and mathematics for grades K-12 called the Common Core State Standards ("Common Core"). In June 2009, Governor Nixon and Commissioner of Education Nicastro signed a memorandum of agreement committing Missouri to adopt the Common Core standards.

Later in 2009, the U.S. Department of Education issued an invitation to states to apply for Race to the Top ("RTTT") grant funding. The purpose of RTTT was to "replace the existing patchwork of State standards" with uniform national standards. To qualify for funding, states had to demonstrate their commitment to "high-quality standards," which they could do by "participat[ing] in a consortium of States that . . . [i]s working toward jointly developing and adopting a common set of K-12 standards . . . that are supported by evidence that they are internationally benchmarked and build toward college and career readiness by the time of high school graduation."

The U.S. Department of Education provided further incentive for the creation of these educational consortia, announcing that, under the RTTT grant program, it

2

would provide funding to consortia of states to develop assessments aligned with the common K-12 standards.  To be eligible for funding, each consortium had to include at least 15 states, and it had to require its member states to adopt uniform academic performance assessment standards by the 2014-2015 school year.

SBAC was one of the multi-state consortia formed to take advantage of the RTTT assessment funding.  In May 2010, Governor Nixon and Commissioner Nicastro signed a memorandum of understanding committing Missouri to be a member of SBAC.  The memorandum of understanding provided that, in addition to adopting and implementing the Common Core standards, Missouri agreed to fully implement statewide SBAC's summative assessments in grades 3-8 and high school for both mathematics and English language arts no later than the 2014-2015 school year; adhere to the governance of SBAC as outlined in the document; agree to support SBAC's decisions; agree to follow agreed-upon timelines; be willing to participate in the decision-making process and, because Missouri was a governing state in the consortium, be willing to participate in final decisions; and identify and implement a plan to address barriers in state law, statute, regulation, or policy to implementing SBAC's proposed assessment system.  In September 2010, the U.S. Department of Education awarded a grant of approximately $159 million in RTTT funds to SBAC, plus a supplemental award of over $15 million to help participating states successfully transition to common standards and assessments.

In September 2011, the U.S. Department of Education announced a plan to allow states to obtain waivers of some provisions of the No Child Left Behind Act if

3

the states had both college-ready and career-ready statewide standards for all students and "high-quality assessments." Commissioner Nicastro subsequently submitted a No Child Left Behind waiver request on behalf of the State of Missouri. The U.S. Department of Education approved the request, thereby allowing Missouri to receive federal funding so long as Missouri used the SBAC assessments or their functional equivalent.

SBAC's federal funding from the RTTT grant ended in late 2014. To continue its assessment development efforts after the RTTT grant ended, SBAC moved its activities to the University of California, Los Angeles. Since July 1, 2014, SBAC has operated within UCLA's Graduate School of Education and Information Studies, National Center for Research on Evaluation, Standards and Student Testing. The participating states jointly fund SBAC through payments to the University of California.

In late 2014, the State of Missouri, through DESE's Chief of Staff, entered into a Memorandum of Understanding and Agreement ("2014 agreement") with the Regents of the University of California regarding Missouri's continued participation in SBAC. In the 2014 agreement, Missouri agreed to participate in SBAC's governing board and be bound by SBAC's governing board procedures and "all other decisions and actions" of the governing board that were intended to bind SBAC's members. The 2014 agreement indicated that Missouri would have access to SBAC's assessment products and, as a member state, would have input in the development and implementation process of those products. The 2014 agreement

4

indicated that Missouri's annual fee as a member state of SBAC for 2014-2015 would be $4,242,000.

In September 2014, Respondents, who are Missouri residents and taxpayers, filed a petition for declaratory and injunctive relief against Appellants challenging Missouri's membership in and payment of dues to SBAC. Respondents alleged that Missouri's membership in SBAC is illegal on three grounds: (1) it violates the Compact Clause of the U.S. Constitution, Art. I, § 10, cl. 3; (2) it violates federal law guaranteeing state and local control of curriculum, programs of instruction, and related matters in public schools; and (3) it violates Missouri law limiting the number of academic performance standards that the state board of education can adopt. Respondents sought declaratory and injunctive relief.

Both parties filed motions for summary judgment. The circuit court granted Respondents' motion. In its judgment, the court held that SBAC is an unlawful interstate compact in violation of the Compact Clause of the U.S. Constitution and "numerous federal statutes." The court further held that Missouri's participation in SBAC as a member is unlawful under both state and federal law.

Accordingly, the court declared that any of Missouri's "putative obligations, including the obligation to pay membership fees," to SBAC are illegal and void and that no Missouri taxpayer funds may be disbursed, either directly or indirectly, to SBAC in the form of membership fees. The court permanently enjoined the Appellants "and all those in active concert with them, from taking any action to implement or otherwise effectuate any payment of Missouri funds as membership fees to SBAC, whether directly or indirectly." Appellants filed this appeal.

5

Respondents contend that, while this appeal was pending, events occurred that rendered the appeal moot. Mootness is a threshold question that implicates the justiciability of an appeal. *TCF, LLC v. City of St. Louis*, 402 S.W.3d 176, 181 (Mo. App. 2013). "'[A] case is moot if a judgment rendered has no practical effect upon an existent controversy.'" *State ex rel. Chastain v. City of Kansas City*, 968 S.W.2d 232, 236 (Mo. App. 1998) (citation omitted). "When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed." *TCF*, 402 S.W.3d at 181. In deciding whether a case is moot, we may consider matters outside of the record. *Chastain*, 968 S.W.2d at 237.

There are two recognized exceptions to the general rule of dismissal "under which this court may exercise its discretion to hear the appeal and reach the merits of a moot case." *Floyd v. Dep't of Mental Health*, 452 S.W.3d 154, 158 (Mo. App. 2014). These exceptions are (1) where the case becomes moot after it has been argued and submitted, *id*., and (2) where "the case presents an unsettled legal issue of public interest and importance of a recurring nature that will escape review unless the court exercises its discretionary jurisdiction," *Chastain*, 968 S.W.2d at 237. The second exception, referred to as the "public interest" or "capable of repetition" exception, "is construed very narrowly." *TCF*, 402 S.W.3d at 181. "If an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of appellate review, then the 'public interest' exception does not apply." *Chastain*, 968 S.W.2d at 237.

6

After the circuit court entered its judgment in this case, the General Assembly passed, and Governor Nixon signed, House Bill 2 ("HB 2"). HB 2 appropriates money to the Board of Education and DESE for the period of July 1, 2015 through June 30, 2016. Section 2.070 of HB 2 appropriates a total of $22,583,468 to DESE for its Performance Based Assessment Program and states, in pertinent part:

> For the Performance Based Assessment Program, . . . provided that no funds from this section shall be used for license fees or membership dues for the Smarter Balanced Assessment Consortium and further provided that no later than February 1, 2016 the Department of Elementary and Secondary Education shall submit a plan for the development and implementation of a new, Missouri-based state assessment plan for review and approval by the House Budget Committee and Senate Appropriations Committee, and further provided that $7,000,000 be used solely for development of a Missouri-based state assessment plan[.]

The language of Section 2.070 of HB 2 expressly prohibits DESE from using any of the funds designated for the Performance Based Assessment Program to pay SBAC for license fees or membership dues.

In July 2015, the Assistant Commissioner of DESE's Office of College and Career Readiness notified SBAC that "Missouri will not continue as a licensee of materials for the 2015-2016 school year" because "[t]he appropriations bill passed by the legislature and signed by the governor contains language preventing the agency from spending money as a member or licensee of the Smarter Balanced Assessment Consortium." Attached to the Assistant Commissioner's letter to SBAC was a legal opinion from DESE's General Counsel. The legal opinion stated, "As general counsel for DESE, it is my legal opinion that the language of HB 2

7

specifically prohibits the State of Missouri from participating as a member or as a licensee in the Smarter Balance Assessment Consortium." DESE's General Counsel requested that Missouri's membership in SBAC be terminated and that the termination be effective immediately, "due to the specific prohibitive language of the Missouri appropriation language."[3]

The termination of Missouri's membership in SBAC rendered Appellants' appeal of the circuit court's judgment moot. There is no longer an actual, live controversy regarding Missouri's membership in and payment of membership dues to SBAC. A ruling on the merits of the appeal would have no practical effect on an existent controversy.

Appellants argue that the case is not moot because the circuit court's judgment "could cast doubt on many if not all" of Missouri's agreements with other states, "could deter future agreements," and could be "a weapon available for use by those unhappy with any multistate action." We disagree. The judgment neither addresses nor prohibits Missouri's participation in other multistate agreements concerning education or any other matter. The judgment pertains solely to Missouri's membership in SBAC. Because Missouri is no longer a member of SBAC, the appeal is moot.

The exceptions permitting us to exercise our discretion to hear the appeal despite its mootness are not applicable. The case became moot well before it was argued and submitted. *See Floyd*, 452 S.W.3d at 158. Likewise, the case does

---

[3] We do not reach the issue of the legal effect of the restrictive language in HB 2 or the accuracy of the legal opinion given by DESE's General Counsel. The fact that DESE terminated the membership in SBAC and ceased all payments is the operative issue.

not fall within the narrow "public interest" or "capable of repetition" exception. To invoke this exception, Appellants must show that the "'case presents an issue that is (1) of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies.'" *Asher v. Carnahan*, 268 S.W.3d 427, 431 (Mo. App. 2008) (citation omitted). While this case may be of general public interest, it does not meet the exception's other requirements.

It is doubtful that this issue will recur, as language in HB 2 and other legislative action have made it very unlikely that DESE will seek to resume payments to SBAC after the 2015-2016 school year. In addition, the legislature has required the State Board of Education to adopt and implement new academic performance standards for the 2016-2017 school year and to align the statewide assessment plan to those standards as needed. § 161.855.3, RSMo Supp. 2014. Without knowing what those new academic performance standards will be, it is impossible to know which, if any, assessment provider DESE will employ to obtain Missouri-based assessments aligned with the new standards. While a party seeking to invoke the "capable of repetition" exception "need not identify a specific, looming future controversy which will raise the same issues as the present case, it must point to circumstances which take the possibility of recurrence out of the realm of pure speculation." *Jackson Cty. Bd. of Election Comm'rs v. City of Lee's Summit*, 277 S.W.3d 740, 745 (Mo. App. 2008). The possibility that Appellants might seek to resume payments to SBAC at some point in the future is purely speculative, particularly in light of the legislature's actions.

Even if the issues in this case were to recur in the future, however, we see no reason why they would evade appellate review. "For a case to evade review in future live controversies, the duration of the controversy must be so limited that it is not possible for a claim to be heard and appeals to be exhausted during its duration." *Bernhardt v. McCarthy*, 467 S.W.3d 348, 348 (Mo. App. 2015). As Respondents note, this case has become moot "due to the intervention of the General Assembly, not due to some trait inherent in the dispute that inevitably would lead future, similar cases to become moot before appellate review." The exceptions allowing for review of this appeal despite its mootness are not present.

## CONCLUSION

The appeal is dismissed as moot. We deny, without prejudice, Appellants' request to vacate the judgment.

_____
LISA WHITE HARDWICK, JUDGE


ALL CONCUR.

10